# STATE OF MICHIGAN

# COURT OF APPEALS

SALKO ADANALIC,

      Plaintiff-Appellee/Cross-Appellant,

and

SPECTRUM HEALTH HOSPITALS,

      Intervening Plaintiff-
      Appellee/Cross-Appellant,

and

ORTHOPAEDIC ASSOCIATES OF MICHIGAN,

      Intervening Plaintiff-Appellee,

v

HARCO NATIONAL INSURANCE COMPANY,

      Defendant-Appellant/Cross-
      Appellee,

and

MICHIGAN MILLERS MUTUAL INSURANCE
COMPANY,

      Defendant-Appellant/Cross-
      Appellee.

FOR PUBLICATION
February 5, 2015
9:00 a.m.

No. 317764
Kent Circuit Court
LC No. 12-004231-NF

Before: BORRELLO, P.J., and SERVITTO and SHAPIRO, JJ.

SHAPIRO, J.

      In this no-fault action, plaintiff Salko Adanalic sought first-party benefits from defendants Harco National Insurance Company (Harco) and Michigan Millers Mutual Insurance Company (Millers). Spectrum Health Hospitals (Spectrum) and Orthopaedic Associates of Michigan (Orthopaedic), who treated Adanalic's injuries, intervened as plaintiffs. Plaintiffs and

-1-

defendants filed cross-motions for summary disposition. The trial court found that Millers was liable to plaintiffs for no-fault personal protection (PIP) benefits and, accordingly, awarded damages to plaintiffs. Millers appeals on two grounds. First, it asserts that Adanalic was not entitled to payment of first-party PIP benefits. Second, it asserts that if Adanalic is entitled to PIP benefits, Harco, rather than Millers, was the highest priority PIP insurer.

On cross-appeal, Spectrum argues that either or both Millers and Harco are liable for attorney fees and penalty interest due to their unlawful failure to promptly pay PIP benefits. We affirm the trial court's ruling that plaintiffs were entitled to PIP benefits and that Millers was first in priority and so responsible for payment of those benefits and penalty interest. We reverse the trial court's ruling that Millers was not liable for plaintiffs' attorney fees and so remand for the calculation and award of those statutory fees.

I. FACTS

Adanalic was seriously injured while unloading a pallet from a disabled box truck onto a semi-trailer. He had contracted with DIS Transportation (a nonparty to this action) to pick up, haul, and deliver various loads of cargo. On October 1, 2011, he was returning to Grand Rapids from an out-of-state delivery, hauling an empty semi-trailer. He accepted a DIS dispatch to a truck stop in Indiana for the purpose of removing loaded pallets from the disabled box truck and loading them into his semi-trailer.[1] Both the truck and the semi-trailer were insured by defendant Harco under a policy which included Michigan no-fault coverage. The policy was issued to DIS. Adanalic had Michigan no-fault insurance through defendant Millers under a policy issued to his wife.

Upon arriving at the Indiana truck stop, Adanalic backed his semi-trailer to approximately nine feet from the disabled box truck which was of a different height. A ramp was extended from the box truck to the semi-trailer and used as a path for the transfer of the loaded pallets. Adanalic and the driver of the box truck then began moving the loaded pallets, one at a time, along the ramp. The other driver pushed the pallets while Adanalic pulled them. He did so by using straps attached to the pallets for that purpose. While the two men were loading the third pallet onto the truck operated by Adanalic, the loaded pallet fell and it pulled Adanalic, who was attached by the pallet straps, down with it, injuring him.

Adanalic sought PIP benefits from Millers and Harco, but each denied his claim. Several months later, on March 12, 2012, he filed suit against defendants, seeking first-party PIP benefits for his injuries. Plaintiffs Spectrum and Orthopaedic subsequently filed intervening complaints against both defendants. Both defendants responded with denials of coverage.

---

[1] The semi-trailer was registered to Trailer X-Press, Inc. (a nonparty), owned by Fleet Service of West Michigan, LLC (a nonparty), and leased long-term to DIS. The truck hauling the semi-trailer was owned by Adanalic himself but also under long-term lease to DIS. Because both the truck and semi-trailer were long-term leased to DIS, DIS is considered the "owner" of both vehicles for the purposes of the no-fault act. MCL 500.3101(2)(h)(*i*).

The parties filed cross-motions for summary disposition under MCR 2.116(C)(10). After hearing argument, the trial court issued a written opinion ruling that: (1) Adanalic was entitled to PIP benefits; (2) Millers was the insurer of highest priority and, therefore, responsible for payment of those PIP benefits; (3) Millers was responsible for penalty interest due to its delay in paying Adanalic's PIP benefits, and; (4) Millers was not responsible for plaintiffs' attorney fees.

The parties then submitted stipulations of fact regarding damages. The trial court subsequently assessed damages against Millers: $110,560.83 to Adanalic, $96,243.52 to Spectrum, and $8,944.83 to Orthopaedic.[2] This appeal and cross-appeal followed.

## II. NO-FAULT PIP BENEFITS

Millers argues that two provisions of the no-fault act, MCL 500.3101 *et seq.*, relieve it of responsibility for payment of Adanalic's PIP benefits. First, it argues that the circumstances of Adanalic's injuries do not satisfy any of the "parked vehicle exceptions" enumerated in MCL 500.3106(1). Second, it argues that workers' compensation benefits were "available" to Adanalic under MCL 500.3106(2) and, therefore, Millers is not responsible for payment of PIP benefits. We conclude that both arguments fail.

Both of these issues involve questions of statutory interpretation, which we review de novo.[3] *Radina v Wieland Sales, Inc*, 297 Mich App 369, 373; 824 NW2d 587 (2012). As our Supreme Court has instructed,

> . . . the purpose of statutory construction is to discern and give effect to the intent of the Legislature. In determining the intent of the Legislature, this Court must first look to the language of the statute. The Court must, first and foremost, interpret the language of a statute in a manner that is consistent with the intent of the Legislature. As far as possible, effect should be given to every phrase, clause, and word in the statute. The statutory language must be read and understood in its grammatical context, unless it is clear that something different was intended. Moreover, when considering the correct interpretation, the statute must be read as a whole. Individual words and phrases, while important, should be read in the context of the entire legislative scheme. While defining particular words in statutes, we must consider both the plain meaning of the critical word or phrase and its placement and purpose in the statutory scheme. A statute must be read in conjunction with other relevant statutes to ensure that the legislative intent is correctly ascertained. The statute must be interpreted in a manner that ensures that it works in harmony with the entire statutory scheme. [*Bush v Shabahang*,

---

[2] The amount of PIP benefits due is not at issue in this appeal.

[3] We also review de novo a trial court's grant of summary disposition under MCR 2.116(C)(10). *Ernsting v Ave Maria College*, 274 Mich App 506, 509; 736 NW2d 574 (2007).

484 Mich 156, 166-167; 772 NW2d 272 (2009) (formatting and citations omitted).]

And, "[g]iven the remedial nature of the no-fault act, courts must liberally construe its provisions in favor of the persons who are its intended beneficiaries." *Frierson v West American Ins Co*, 261 Mich App 732, 734; 683 NW2d 695 (2004) (citations omitted).

## A. PARKED VEHICLE EXCEPTION

At the time Adanalic was injured, the relevant vehicles were parked. Per MCL 500.3106(1), PIP coverage does not apply where the relevant vehicle is parked unless one or more of three statutory exceptions is present. The statute provides that for purposes of obtaining no-fault benefits, "[a]ccidental bodily injury does not arise out of the ownership, operation, maintenance, or use of a parked vehicle as a motor vehicle unless any of the following occur":

> (a) The vehicle was parked in such a way as to cause unreasonable risk of the bodily injury which occurred.

> (b) Except as provided in subsection (2), *the injury was a direct result of physical contact with* equipment permanently mounted on the vehicle, while the equipment was being operated or used, or *property being lifted onto or lowered from the vehicle in the loading or unloading process*.

> (c) Except as provided in subsection (2), the injury was sustained by a person while occupying, entering into, or alighting from the vehicle.

> [Emphasis added.]

The parties agree that subsection (1)(a) does not apply in this case. Millers argues that neither subsection (1)(b) nor (1)(c) was satisfied. The trial court found that plaintiffs satisfied the parked vehicle exception of subsection (1)(b).

As described in *Arnold v Auto-Owners Ins Co*, 84 Mich App 75, 79-80; 269 NW2d 311 (1978), MCL 500.3106(1)(b) contains two independent clauses such that it provides coverage where the injury was the direct result of physical contact with either: equipment permanently mounted on the vehicle *or* "property being lifted onto or lowered from the parked vehicle in the loading or unloading process."

Millers agrees that (1) Adanalic was lifting or lowering property from a parked vehicle during the loading or unloading process and (2) Adanalic was in physical contact with that property when he was injured. It is Millers' contention that regardless of the fact that the fall of the item Adanalic was loading was the direct cause of his fall, his injuries are not covered as they did not actually occur until that fall ended with his impact with the ground.

The trial court found that the requirements of MCL 500.3106(1)(b) were met, stating in its opinion:

The parties' arguments concern the exceptions found in MCL 500.3106(b) and (c). This Court finds that the second scenario under MCL 500.3106(1)(b) applies in this case, entitling Adanalic to no-fault benefits.

The second scenario of MCL 500.3106(1)(b) "makes compensable injuries which are a direct result of physical contact with property being lifted onto or lowered from the parked vehicle in the loading or unloading process." It is undisputed that Adanalic was injured during the loading or unloading process. The parties dispute whether Adanalic's injuries were "a direct result of physical contract with [the] property being lifted onto [the trailer.]"

Millers argues that the injuries did not result from contact with the pallet, but, rather from contact with the ground when he fell. Millers seems to contend that MCL 500.3106(1)(b) requires that the injuries result from "direct physical contact" with the property. However, the statute only requires that the injuries were "a direct result of physical contact with [the] property."

In this case, Adanalic was pulling the pallet with the belt wrapped around the pallet. The ramp connecting the trailer and the disabled box car collapsed, which caused the pallet to fall to the ground, which, in turn, caused Adanalic to fall to the ground. These facts establish that Adanalic's injuries were "a direct result of physical contact" with the pallet. Therefore, MCL 500.3106(1)(b) is satisfied in this case.

Had the pallet landed on Adanalic or had Adanalic fell on the pallet, i.e., "direct physical contact," that certainly would satisfy MCL 500.3106(1)(b). But the statute does not require that the property, itself, inflict the injuries. It only requires that the injuries directly result from physical contact with the property. Therefore, the statute is satisfied here, where Adanalic's physical contact with the pallet caused him to fall to the ground, directly resulting in his injuries.

We agree with the trial court's analysis and affirm its conclusion, which is consistent with the statute as written. Millers attempts to fundamentally rewrite the statute to state that a plaintiff's injury must occur as a result of being *struck* by the property being loaded or unloaded. However, the word "struck" is nowhere in the statute. Rather, it requires that there be "physical contact" with the property being loaded and that such physical contact "directly result" in injury. As noted, Millers concedes that Adanalic was in physical contact with the pallet he was loading when it fell and that such contact pulled him down with it. And while Millers does not explicitly concede it, there is little dispute that Adanalic's fall and injury occurred in a single, unbroken, and immediate course of events that occurred because he was in contact with the pallet. The word "direct" is not defined in the no-fault act and, therefore, we may turn to a dictionary for assistance. See, e.g., *Glenn v TPI Petroleum, Inc*, 305 Mich App 698, 708-709; 854 NW2d 509 (2014). "Direct," when used as an adjective, is defined as "proceeding in a straight line or by the shortest course; straight, not oblique" and "proceeding in an unbroken line of descent." *Random House Webster's College Dictionary* (2001). It does not require an instantaneous occurrence, but one which *proceeds* in *direct* fashion. While hitting the ground when falling occurs at a different instant than the moment the fall begins, it begs credulity (and the law of gravity) to

-5-

suggest that a fall ending with impact with the ground is not a direct process. Indeed, Adanalic's injuries were literally the result of "proceeding in an unbroken line of descent." *Id*.

None of the cases of record cited by Millers support its proposed reading of the statute. *Winter v Auto Club of Mich*, 433 Mich 446, 448-449; 446 NW2d 132 (1989), involved a case where the plaintiff was injured by a piece of concrete that fell from the hook of a parked tow truck. The Court held that there was not coverage under the "loading" exception, MCL 500.3106(1)(b), because the concrete piece was not being loaded or unloaded onto a vehicle, but simply being temporarily raised so that the soil beneath it could be leveled. *Id*. at 460. Indeed, it was never loaded nor intended to be transported.[4] *Id*. In *Frohm v American Motorists Ins Co*, 148 Mich App 308, 309; 383 NW2d 604 (1985), the plaintiff was not loading or unloading a vehicle when he was injured; rather, he hurt his back while throwing material he found on one loading dock into a waste bin on an adjacent loading dock. Although the waste bin would later be loaded onto the subject vehicle, the filling of that bin away from the vehicle was an activity preparatory to the actual loading. *Id*. at 311. That bears no relation to the instant case, where Adanalic was injured when the actual object that he was directly and actively loading into the truck fell and pulled him down, causing injury. The other case cited by Millers, *Dowdy v Motorland Ins Co*, 97 Mich App 242; 293 NW2d 782 (1980), is even further afield. In that case, the plaintiff was injured when a stack of steel on a warehouse floor near a loading dock fell on him. *Id*. at 245. The plaintiff was unloading his truck when this occurred, but it was undisputed that the steel that injured him was not being loaded or unloaded at the time. *Id*. at 247. Indeed, it had not even been transported by the plaintiff. *Id*. As this Court stated, "the injury [was not] due to contact with property which was being lifted onto or lowered from the vehicle in the loading process." *Id*.

The trial court correctly held that Adanalic satisfied the parked vehicle exception of MCL 500.3106(1)(b).[5]

## B. WORKERS' COMPENSATION EXCLUSION

Millers also argues that it has no responsibility to pay Adanalic's PIP benefits because workers' compensation benefits were "available" to him under MCL 500.3106(2). That statute provides in pertinent part:

> *Accidental bodily injury does not arise out of the ownership, operation, maintenance, or use of a parked vehicle as a motor vehicle if benefits under the worker's disability compensation act of 1969*[6] *. . . or under a similar law of*

---

[4] The opinion states: "It is undisputed that the cement slab in the instant case was not being lifted onto or lowered from the tow truck. No such operation was attempted. . . . At no time did anyone intend to load the slab onto the tow truck." *Winter*, 433 Mich at 460.

[5] Pursuant to this finding, we need not address Millers' argument that Adanalic failed to satisfy the parked vehicle exception of MCL 500.3106(1)(c).

[6] MCL 418.301 *et seq*.

another state or under a similar federal law, *are available to an employee* who sustains the injury in the course of his or her employment while doing either of the following:

> (a) Loading, unloading, or doing mechanical work on a vehicle unless the injury arose from the use or operation of another vehicle. As used in this subdivision, "another vehicle" does not include a motor vehicle being loaded on, unloaded from, or secured to, as cargo or freight, a motor vehicle.

> (b) Entering into or alighting from the vehicle unless the injury was sustained while entering into or alighting from the vehicle immediately after the vehicle became disabled. This subdivision shall not apply if the injury arose from the use or operation of another vehicle. As used in this subdivision, "another vehicle" does not include a motor vehicle being loaded on, unloaded from or secured to, as cargo or freight, a motor vehicle.

> [Emphasis added.]

Following his injury, Adanalic filed an application for workers' compensation benefits from DIS, the entity that contracted with him to deliver the subject cargo. DIS denied the workers' compensation claim on the grounds that Adanalic was an independent contractor, not an employee. Despite this denial, Millers has refused to pay any PIP benefits to Adanalic.[7]

"The workers compensation act and the no-fault act are complete and self-contained legislative schemes, and neither scheme should be permitted to frustrate the purposes and objectives of the other scheme." *Perez v State Farm Mut Auto Ins Co*, 418 Mich 634, 649-650; 344 NW2d 773 (1984) (quotation marks and citation omitted).

Millers relies on the language from *Perez* mandating that the claimant, in this case, Adanalic, make "reasonable efforts" to obtain available workers compensation benefits. *Id*. at 650. However, Millers appears to conflate the set-off provision of MCL 500.3109(1) and the exclusion provision of MCL 500.3106(2). *Perez* states that this "reasonable efforts" requirement arises specifically from the "required to be provided" clause of MCL 500.3109(1).[8] *Id*. No such "required to be provided" language is present in MCL 500.3106(2).

It is well-settled that under MCL 500.3109(1), workers' compensation benefits may be deducted, i.e., set off, from no-fault benefits. See *Sprecht v Citizens Ins Co of America*, 234

---

[7] It has now been over three years since Adanalic's injury and he has received neither workers' compensation nor PIP benefits.

[8] "[T]he 'required to be provided' clause of § 3109(1) means only that the injured person is obliged to use reasonable efforts to obtain available workers' compensation payments." *Perez*, 418 Mich at 650. Even where that requirement applies, "it does not, in light of the underlying purpose of the no-fault act, call for a potentially lengthy and costly effort." *Id*.

Mich App 292, 295; 593 NW2d 670 (1999). The issue before us in this case, however, does not involve a claim for a set-off pursuant to that statute. Rather, the question arises under the provision in MCL 500.3106(2) specifically addressing the interplay of no-fault benefits and workers' compensation benefits where certain parked vehicle exceptions are at issue. The statute provides that where those exceptions are at issue, no-fault benefits are not paid "if benefits under the worker's disability compensation act . . . are available to an employee who sustains the injury in the course of . . . employment."

Unlike MCL 500.3109(1), which addresses workers' compensation benefits that are "provided or required to be provided under the laws of any state," MCL 500.3106(2) addresses only those workers' compensation benefits that are "available" to the employee. "Available" is not defined in the no-fault act and so we may turn to the dictionary for assistance. *Glenn*, 305 Mich App at 708-709. According to *Random House Webster's College Dictionary* (2001), "available" means "suitable or ready for use; at hand." When an alleged employer denies workers' compensation benefits and asserts that the injured individual is not an employee, as DIS did in Adanalic's case, those benefits cannot be said to be "ready for use" or "at hand."

Both the workers' compensation system and the no-fault system are intended to provide limited, but prompt payment of benefits to injured persons in order to assure medical care, rehabilitation, and income replacement. It is Millers' position that where the employer and the no-fault insurer disagree on which of these two schemes is primarily applicable, the injured person is to receive no benefits at all until each of the two insurers are satisfied that their assertion of denial has been fully adjudicated. We reject the notion that because an individual may be covered by two broad systems of insurance, he is not entitled to any benefits whatsoever for however long it takes for the matter to be adjudicated. Indeed, requiring an employee to engage in lengthy workers' compensation litigation before paying PIP benefits "is wholly inadequate to accomplish the no-fault act's purpose of providing assured, adequate, and prompt recovery for economic loss arising from motor vehicle accidents." *Perez*, 418 Mich at 650.

The Legislature chose the word "available" to prevent duplicative recovery to an injured person under both no-fault and workers' compensation. See *North v Kolomyjec*, 199 Mich App 724, 728; 502 NW2d 765 (1993) ("The clear intent of the Legislature in § 3106 was to eliminate duplication of . . . benefits of workers' compensation with . . . benefits afforded by the no-fault act."). In this case, no duplicative recovery is at issue. Adanalic was denied workers' compensation benefits and so those benefits are not "available" to him under both the plain meaning of the statute and the intent of the no-fault act. The trial court did not err by so ruling.

Moreover, even if DIS's denial of Adanalic's application for workers' compensation benefits was improper, Millers has the right to fully and independently protect its interests as his subrogee. It has always been understood that a no-fault insurer is a "party in interest" in a workers' compensation case involving its insured because it has "a direct financial interest in any possible workers' compensation award." *Russell v Welcor, Inc*, 157 Mich App 351, 355; 403 NW2d 133 (1987). And, MCL 418.847(1) provides that "any party in interest" may file a workers' compensation application even where the injured party does not obtain a hearing if the application submitted by the injured party is disputed. Any doubt as to the scope of this right was fully resolved by *Auto-Owners Ins Co v Amoco Production Co*, 468 Mich 53, 59-62; 658 NW2d 460 (2003), which held not only that the no-fault insurer has the right to file its own

petition but also that it is entitled to be fully reimbursed by the employer for all reasonable expenses should it prevail. As that case explained, the no-fault insurer stands in place of the insured and pursuant to MCL 418.315(1), if an employer wrongly refuses to pay benefits and the injured worker must pay for his own medical treatment, the worker "shall be reimbursed for the reasonable expense paid by [him]" and such reimbursement is not subject to the cost containment provisions of the workers' compensation act. *Id*. at 62 ("The principle of equitable subrogation allows [the no-fault insurer] to assert the right of . . . its insured, to receive full reimbursement from [the employer].") See also *Dowd-List v Hagler Bailly & Hartford Ins Co*, 2006 Mich ACO 112, p 5 ("the statutory language . . . provides for [a no-fault insurer's application for mediation or hearing] even without an application filed by the injured worker."); *Lingane v Community Centre/HCM Corp*, 1993 Mich ACO 29, p 2 ("a no-fault carrier is a 'party in interest' under section 847(1) [MCL 418.847(1)] of the workers' compensation act both for the purpose of intervening in a[n] existing action and for the purpose of initiating an action. . . . [S]ection 847(1) does not distinguish between intervention and initiation.").

In sum, workers' compensation benefits were not "available" to Adanalic and Millers was not entitled withhold payment of PIP benefits under MCL 500.3106(2). To hold otherwise would be contrary to the purpose of the no-fault act, which is to ensure the prompt payment of PIP benefits owed. *Perez*, 418 Mich at 650. The law provides Millers with ample recourse to protect its reimbursement interest and a "no-fault carrier is not entitled to delay payments in order to wait for the [workers' compensation] determination." *Specht*, 234 Mich App at 296. Accordingly, the trial court did not err by ruling that MCL 500.3106(2) did not relieve Millers of its responsibility to promptly pay Adanalic's PIP benefits.

## C. SUMMARY DISPOSITION

We find that the trial court did not err by finding that Adanalic satisfied the parked vehicle exception of MCL 500.3106(1)(b) and that workers' compensation benefits were not available to him under MCL 500.3106(2)(a). The actual facts of Adanalic's accident and resulting injuries are undisputed and we have held that where "[t]he dispute is not as to what occurred, but as to whether what occurred came within the insurance coverage of loading[,]" summary disposition may be properly granted. *Dembinski v Aetna Cas & Surety Co*, 76 Mich App 181, 183-184; 256 NW2d 69 (1977). Accordingly, we affirm the trial court's summary disposition ruling that plaintiffs are entitled to PIP benefits.

## III. INSURER PRIORITY

Millers argues that Adanalic was an employee of DIS when his injuries occurred and that, therefore, Harco, as DIS's no-fault insurer, is responsible for Adanalic's PIP benefits under MCL 500.3114(3), which provides:

> An employee . . . who suffers accidental bodily injury while an occupant of a motor vehicle owned or registered by the employer, shall receive personal protection insurance benefits to which the employee is entitled from the insurer of the furnished vehicle.

It is undisputed that Harco was the no-fault insurer, under a policy issued to DIS, of both the semi-truck and semi-trailer used by Adanalic at the time of the accident. Thus, Harco was the insurer of the "furnished vehicle." The trial court ruled, however, that Adanalic was not an "employee" of DIS at the time he sustained his injuries.

For the purposes of MCL 500.3114(3), whether an injured party was an "employee" is determined by applying the "economic reality test." *Parham v Preferred Risk Mut Ins Co*, 124 Mich App 618, 624-625; 335 NW2d 106 (1983). "By this test, factors to be considered include: (a) control of the worker's duties, (b) payment of wages, (c) right to hire, fire and discipline, and (d) the performance of the duties as an integral part of the employer's business towards the accomplishment of a common goal." *Id*. at 623. An independent contractor is not considered an "employee" for purposes of the no-fault act. *Citizens Ins Co of America v Auto Club Ins Ass'n*, 179 Mich App 461, 465; 446 NW2d 482 (1989). The trial court applied the economic reality test and found that Adanalic was not an employee, but an independent contractor, of DIS, writing:

> To begin with, the Contractor Operator Agreement ("the Agreement") between DIS and Adanalic refers to Adanalic as "Contractor." It also specifically states at Paragraph 17 that the Agreement creates a carrier-independent contractor relationship, not an employer-employee relationship.

> For the first factor, Paragraph 3 of the Agreement states that Adanalic had the right to decline to haul any load offered by DIS. Deposition testimony of Adanalic and DIS' employee confirmed that this was the actual practice between the parties. Paragraph 6 of the Agreement states that it was up to Adanalic to "determine the means and methods of the performance of all transportation services . . . ." DIS' employee confirmed this, testifying that Adanalic was free to determine how a load would be delivered.

> For the second factor, Paragraph 4 of the Agreement states that DIS compensated Adanalic based on a percentage of the loads he delivered. However, under Paragraph 8 of the Agreement, Adanalic was responsible for withholding all taxes and for workers compensation insurance. DIS' employee confirmed this at deposition.

> For the third factor, Paragraph 12 of the Agreement states that the Agreement was terminable at will by either party. As for the fourth factor, Harco argues that the services provided by Adanalic were fungible, in that DIS had numerous other drivers that could deliver a load if Adanalic declined one. Therefore, the performance of his duties were not an integral part of DIS' business.

> Considering the language of the Agreement that specifically sets forth the parties' relationship, as well as the other provisions of the Agreement and the parties' actual practices under the four factors of the economic reality test, this Court finds that Adanalic was an independent contractor, not an employee.

-10-

Millers first argues that the trial court "relied exclusively upon the provisions of a 'Contractor Operator Agreement.'" See *Kidder v Miller-Davis Co*, 455 Mich 25, 45-46; 564 NW2d 872 (1997) (when conducting the economic reality test, the contractual language used by the parties "is neither dispositive nor controlling"). This is an inaccurate characterization of the trial court's ruling. The trial court, as quoted above, did reference the Contractor Operator Agreement. However, it only mentioned the contract's definition of Adanalic as an independent contractor as a preliminary matter, and there is no indication that it solely relied on that designation. Moreover, while the court also referenced the Contractor Operator Agreement in discussing the four factors, it bolstered its conclusions as to each factor with reference to the depositions of Adanalic and DIS's operations manager. In sum, the trial court only relied on the Contractor Operator Agreement as but one factor in its analysis, as expressly permitted by caselaw. See *id*. at 46.

Second, Millers takes issue with the trial court's findings as to the four factors of the economic reality test. However, having criticized the trial court for relying on employment classifications in the Contractor Operator Agreement, Millers then relies on employment classifications in other DIS documents to argue that Adanalic was not an independent contractor. Millers also relies on tangentially related deposition testimony wherein Adanalic referred to DIS as his "employer." These arguments do nothing to contradict the trial court's inquiry into the legal import of the actual practices between Adanalic and DIS, all of which support the court's finding that Adanalic was an independent contractor for purposes of the no-fault act.

With regard to "control of the worker's duties," it is undisputed that it was Adanalic's contractual *right* to refuse any load offered by DIS. Whether he frequently exercised that right is immaterial. It was similarly Adanalic's right to determine the means of hauling any load he accepted, i.e., he was under very little specific control of DIS and, upon the exercise of his right to refuse a load, under no control at all. There was similarly no agreement that Adanalic could only drive or haul loads for DIS. With regard to the payment of wages, Adanalic was paid on commission based solely on the loads he accepted. While deductions were made for DIS's advances on insurance costs, there was no withholding of federal or state taxes, and Adanalic was issued 1099 forms. See *Loos v JB Installed Sales, Inc*, 485 Mich 993; 775 NW2d 139 (2009) (income tax records "are directly relevant to the question of employee status"). Adanalic was not only responsible for payment of his own taxes, but for his own operating expenses. As to the "right to hire, fire and discipline," the Adanalic-DIS relationship was terminable by either party at will. Adanalic was also free to hire his own employees, who would be responsible to him, not DIS; he would be required to train and supervise those employees with no aid from DIS. Finally, the fourth factor of the economic reality test, "the performance of the duties as an integral part of the employer's business towards the accomplishment of a common goal," does nothing to contradict the trial court's ruling. DIS had numerous contracted drivers, of which Adanalic was merely one. He was free to terminate the relationship at any time or refuse to haul any load dispatched by DIS. Such a relationship cannot be said to be "integral" to DIS's general goals, presumably making a profit by dispatching contracted drivers to haul cargo.

Accordingly, we find that the trial court did not err by finding that, for purposes of the no-fault act, Adanalic was an independent contractor, not an employee, of DIS. Thus, the trial court did not err by finding that Millers, as Adanalic's no-fault insurer, was responsible for payment of his PIP benefits.

## IV. ATTORNEY FEES

On cross-appeal, Spectrum argues that the trial court erred by denying its request for attorney fees under MCL 500.3148(1). We agree.

> The trial court's decision to grant or deny attorney fees under the no-fault act presents a mixed question of law and fact. What constitutes reasonableness is a question of law, but whether the defendant's denial of benefits is reasonable under the particular facts of the case is a question of fact. We review de novo questions of law, but review the trial court's findings of fact for clear error. A finding is clearly erroneous where this Court is left with a definite and firm conviction that a mistake as been made. [*Univ Rehab Alliance, Inc v Farm Bureau Gen Ins Co of Mich*, 279 Mich App 691, 693; 760 NW2d 574 (2008) (quotation marks and citations omitted).]

In this case, there is no significant factual dispute. Thus, whether Millers' actions were reasonable turns on the relationship between those actions and the settled law governing its responsibilities under the no-fault act.

"MCL 500.3148 establishes two prerequisites for the award of attorney fees." *Moore v Secura Ins*, 482 Mich 507, 517; 759 NW2d 833 (2008). "First, the benefits must be overdue, meaning 'not paid within 30 days after [the] insurer receives reasonable proof of the fact and the amount of loss sustained.'" *Id.*, quoting MCL 500.3142(2). It is undisputed that Adanalic's benefits are "overdue" in this case. Second, the insurer must have "unreasonably refused to pay the claim or unreasonably delayed in making proper payment." MCL 500.3148(1). "[A]n insurer's refusal or delay places a burden on the insurer to justify its refusal or delay." *Ross v Auto Club Group*, 481 Mich 1, 11; 748 NW2d 552 (2008). ""The insurer can meet this burden by showing that the refusal or delay is the product of a legitimate question of statutory construction, constitutional law, or factual uncertainty." *Id.*

Millers argues that its failure to promptly pay Adanalic's PIP benefits was based on legitimate questions of statutory construction,[9] i.e., that Adanalic did not satisfy the parked vehicle exception and because worker's compensation benefits were "available" to him. Given our earlier and extensive discussion of the relevant law, we find it beyond question that Millers "unreasonably refused to pay the claim[.]" MCL 500.3148(1).

Regarding its suggested interpretation of MCL 500.3106(1)(b), the parked vehicle exception discussed earlier, there is absolutely no caselaw support for Millers' argument. More to the point, the argument is wholly inconsistent with the plain language of the statute. Millers is asking this Court to rewrite the statute and ignore what was written by the Legislature. Millers

---

[9] Millers does not argue that its refusal or delay was the product of a legitimate question of constitutional law or factual uncertainty.

does not pose a legitimate question of statutory interpretation by simply inventing an alternative reading that is inconsistent with the statute as written and the prior caselaw applying it.[10]

Millers' denial of PIP benefits on the grounds that worker's compensation benefits were "available" to Adanalic under MCL 500.3106(2) is similarly unreasonable. It is undisputed that Adanalic applied for workers' compensation benefits and was denied. Indeed, Millers appears to agree that Adanalic was entitled to benefits, the only question being whether the benefits were to be paid by workers' compensation or no-fault. Yet, as discussed, it is well-settled that in such a situation, the no-fault insurer is to pay the benefits and then exercise its rights as a party in interest to pursue the workers' compensation benefits. Further, under *Auto-Owners*, 468 Mich at 62-63, the no-fault insurer will be made completely whole if it prevails on the worker's compensation claim.

The mechanism Millers proposes is wholly inconsistent with the no-fault act's "purpose of providing assured, adequate, and prompt recovery for economic loss arising from motor vehicle accidents." *Perez*, 418 Mich at 650. It is also inconsistent with the basic and long-settled principle that a "no-fault carrier is not entitled to delay payments in order to wait for the [worker's compensation] determination." *Specht*, 234 Mich App at 296. Where workers' compensation benefits are denied, they are not "at hand" and the no-fault insurer must pay benefits to the injured party while it adjudicates the priority dispute with the employer. If the no-fault insurer prevails in the workers' compensation claim, it will be made whole. If it does not prevail in the workers' compensation matter, then its entire basis for the denial of the no-fault claim was without merit.

The final basis for Millers' denial of Adanalic's PIP benefits was the priority dispute between Millers and Harco. And, as a matter of law, "when the only question is which of two insurers will pay, it is unreasonable for an insurer to refuse payment of benefits." *Regents of Univ of Mich v State Farm Mut Ins Co*, 250 Mich App 719, 737; 650 NW2d 129 (2002).

Accordingly, we find that Millers' refusal to pay Adanalic's PIP benefits was unreasonable and that the trial court erred in concluding otherwise. We reverse the trial court's ruling that Millers' refusal was reasonable and remand for calculation and award of plaintiffs' reasonable attorney fees.[11]

---

[10] Because Adanalic need only satisfy one parked vehicle exception to be entitled to PIP benefits, at least with regard to MCL 500.3106(1), and we find that Millers' rationale for withholding benefits under MCL 500.3106(1)(b) was unreasonable, we need not address Millers' additional argument that its withholding of benefits under MCL 500.3106(1)(c) was reasonable.

[11] Millers is liable for the full amount of assessable attorney fees. Pursuant to *Moore*, 482 Mich at 526, and given our conclusion that Harco is not responsible for Adanalic's subject no-fault benefits, Harco is not liable for plaintiffs' attorney fees incurred in obtaining said benefits.

Affirmed in part and reversed and remanded in part. We do not retain jurisdiction.

/s/ Douglas B. Shapiro
/s/ Stephen L. Borrello
/s/ Deborah A. Servitto