*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

BEATRICE ALGHALI and HAMID ALGHALI,

        Plaintiffs,

and

PAIN MANAGEMENT & EMG,

        Intervening Plaintiff,

V

HANOVER INSURANCE COMPANY and
CITIZENS INSURANCE COMPANY OF
AMERICA,

        Defendants/Third-Party
        Plaintiffs/Cross-Defendants-
        Appellants,

and

ACE AMERICAN INSURANCE COMPANY,

        Defendant/Third-Party
        Defendant/Cross-Plaintiff-Appellee,

and

SCOTT DAVID WOODS,

        Defendant.

UNPUBLISHED
July 9, 2020

No. 343359
Wayne Circuit Court
LC No. 16-004334-NI

Before: GLEICHER, P.J., and SAWYER and METER, JJ.

-1-

PER CURIAM.

Defendant/third-party plaintiff/cross-defendant, Citizens Insurance Company of America (Citizens),[1] appeals as on leave granted the final order disposing of the remaining claims in this priority dispute under the no-fault act, MCL 500.3101 *et seq.* See *Alghali v Hanover Ins Co*, 504 Mich 851; 927 NW2d 705 (2019).[2] On appeal, Citizens disputes the trial court's earlier order granting summary disposition in favor of defendant/third-party defendant/cross-plaintiff ACE American Insurance Company (ACE). For the reasons discussed below, we reverse and remand.

## I. FACTS AND PROCEEDINGS

This case arises out of a motor vehicle accident involving a pink "Mary Kay" Cadillac occupied by plaintiffs, Hamid Alghali and Beatrice Alghali, and a vehicle occupied by defendant Scott David Woods. The case involves a priority dispute between ACE, the insurer of the Cadillac, and Citizens, the insurer of another vehicle owned by plaintiffs. The accident occurred on September 15, 2015, while plaintiffs were running personal errands. Hamid was driving the Cadillac and Beatrice was in the passenger's seat. Plaintiffs' vehicle was rear-ended by a vehicle occupied by defendant Woods.

Beatrice had obtained the Cadillac through her work as an independent contractor for Mary Kay Cosmetics (Mary Kay). Beatrice obtained the vehicle through the "Mary Kay Career Car Program." Because she met certain sales requirements, she earned the option to lease a Cadillac, which she elected to do. The Cadillac was leased from Donlen Trust and purchased from Les Stanford Chevrolet. The certificate of title listed both Donlen Trust and Beatrice as the owners. Mary Kay obtained insurance on the Cadillac through ACE. Mary Kay paid 80% of the premiums and Beatrice paid 20% of the premiums from her commissions. The ACE policy listed only Mary Kay as the "Named Insured."

The ACE policy included an endorsement titled, "Michigan Personal Injury Protection." The endorsement provided for the payment of personal protection insurance (PIP) benefits to "insureds," but excluded the payment of PIP benefits "[t]o anyone entitled to Michigan no-fault benefits as a Named Insured under another policy[,]" and "[t]o anyone entitled to Michigan no-faults benefits as a 'family member' under another policy." At the time of the accident, plaintiffs also owned a Ford Explorer, which was primarily used by Hamid and was insured through Citizens.

Plaintiffs initiated this action against Citizens and Woods. Citizens then filed a third-party complaint against ACE and ACE filed a cross-complaint against Citizens. Citizens thereafter filed a motion to amend its complaint to allege a claim for declaratory relief to confirm that it was not

---

[1] Hanover Insurance Company is also named as an appellant. Plaintiffs' original complaint identified Hanover Insurance Company as a defendant, but a stipulated order to amend the caption to name Citizens as the correct defendant was entered on June 24, 2016.

[2] This Court initially denied Citizens's application for delayed appeal. *Alghali v Hanover Ins Co*, unpublished order of the Court of Appeals, entered September 20, 2018 (Docket No. 343359).

the highest-priority insurer. The trial court stated that it did not believe that Citizens had standing to seek reformation of the ACE policy, but granted Citizens leave to amend its complaint to seek declaratory relief, which it did.

ACE filed a motion for summary disposition under MCR 2.116(C)(10). ACE argued that the Cadillac did not qualify as an employer-furnished vehicle under MCL 500.3114(3) because (1) the Cadillac was not owned or registered by Mary Kay, (2) Beatrice was not an employee of Mary Kay, and (3) the vehicle was not furnished by Mary Kay. ACE argued that Citizens was the highest-priority insurer under MCL 500.3114(1) and (4), as the insurer of the owner of the vehicle occupied by plaintiffs at the time of the accident or the insurer of the operator, and ACE's policy specifically excluded coverage "to anyone entitled to Michigan no-fault benefits as a Named Insured under another policy," or "to anyone entitled to Michigan no-fault benefits as a 'family member' under another policy."

In response, Citizens argued that plaintiffs were occupying an employer-furnished vehicle and ACE was the higher-priority insurer under MCL 500.3114(3). Citizens argued that Beatrice was a self-employed individual and, therefore, was the employer and employee for purposes of MCL 500.3114(3). Citizens argued that ACE, as the insurer of the furnished vehicle, was the highest-priority insurer. Citizens further argued that while ACE would disavow coverage because Mary Kay and its subsidiaries were the named insured, the Legislature clearly intended for the policy to follow the vehicle. Citizens stated that it was anticipated that plaintiffs would contest the ACE policy and seek reformation in light of their payment of more than $14,000 in premiums. Citizens, however, expressly stated that it was not seeking reformation of the policy, but only to hold ACE responsible for its statutory obligation to provide benefits to plaintiffs in this case.

In reply, ACE argued that Citizens had failed to establish that ACE's policy was void. ACE also argued that because the policy only named Mary Kay as an insured, it was impossible to consider Beatrice an employee operating an employer-furnished vehicle under the ACE policy. ACE argued that *Celina Mut Ins Co v Lake States Ins Co*, 452 Mich 84; 549 NW2d 834 (1996), and *Besic v Citizens Ins Co of the Midwest*, 290 Mich App 19; 800 NW2d 93 (2010), were distinguishable because those cases involved injured claimants who were the named insureds on the commercial policies and who were operating their owned vehicles in the course of their business as sole proprietors. In this case, however, Beatrice was not the named insured on the ACE policy, and she was not operating the Cadillac in the course of her business as an independent contractor.

The trial court granted ACE's motion for summary disposition on the basis of the endorsement contained in the ACE policy. Citizens filed a motion for reconsideration, arguing that the exclusion in the ACE policy conflicted with the statutory priority scheme of the no-fault act and, therefore, the trial court erred by granting ACE's motion for summary disposition on that basis. The trial court also denied Citizens's motion for reconsideration. After a final order dismissing the remaining claims against Woods was entered, this appeal ensued.

## II. "EMPLOYER-FURNISHED VEHICLE" PROVISION

First, Citizens argues that the trial court erred by granting ACE's motion for summary disposition because ACE was the highest-priority insurer under the "employer-furnished vehicle" provision. We disagree.

This Court reviews de novo a trial court's decision to grant summary disposition. *Petersen Fin, LLC v City of Kentwood*, 326 Mich App 433, 441; 928 NW2d 245 (2018). "Summary disposition is proper under MCR 2.116(C)(10) if there is no genuine issue as to any material fact, and the moving party is entitled to judgment . . . as a matter of law." *Walrath v Witzenmann USA LLC*, 320 Mich App 125, 130; 904 NW2d 875 (2017) (quotation marks and citation omitted). "We consider the affidavits, pleadings, depositions, admissions, and other documentary evidence in the light most favorable to the nonmoving party." *Id.*

"Under MCL 500.3114(1), a person seeking no-fault benefits must generally look first to his or her own insurer, unless one of the exceptions in MCL 500.3114(2), (3), or (5) applies." *Turner v Farmers Ins Exch*, 327 Mich App 481, 493-494; 934 NW2d 81 (2019), lv gtd 505 Mich 874 (2019). MCL 500.3114(3) provides:

> An employee, his or her spouse, or a relative of either domiciled in the same household, who suffers accidental bodily injury while an occupant of a motor vehicle owned or registered by the employer, shall receive personal protection insurance benefits to which the employee is entitled from the insurer of the furnished vehicle.

In *Celina*, 452 Mich at 85-86, the Court held that MCL 500.3114(3) applies when an injured person is self-employed and operating an insured vehicle. In that case, the injured person was operating a vehicle that he owned. *Id.* at 87. The injured person was the self-employed owner of a sole proprietorship. *Id.* The Court concluded that it was most consistent with the purposes of the no-fault act to apply MCL 500.3114(3) in the case of injuries to a self-employed person, stating that "[t]he cases interpreting that section have given it a broad reading designed to allocate the cost of injuries resulting from use of business vehicles to the business involved through the premiums it pays for insurance." *Id.* at 89. In *Besic*, 290 Mich App at 32, this Court similarly concluded that MCL 500.3114(3) applied to the situation of an injured person who owned the vehicle involved and who worked as a self-employed independent contractor.

In this case, there is no dispute that Beatrice was an independent contractor and owned the Cadillac involved in the accident. The question, however, is whether she was self-employed such that the "employer-furnished vehicle" provision applies. Citizens argues that *Celina* and *Besic* are controlling because Beatrice was a self-employed independent contractor for Mary Kay. We agree.

As an initial matter, ACE argues that *Celina* and *Besic* stand for the proposition that a self-employed person must be operating the employer-furnished vehicle within the person's course of business. This argument is unpersuasive. The only mention of "in the course of business" in

*Celina* comes from the introduction: "The issue presented is whether § 3114(3) of the no-fault act applies when the injured person is operating an insured vehicle in the course of self-employment." *Celina*, 452 Mich at 85. Although the facts establish that the injured person was injured in the course of his business, *id*. at 86, that fact was not essential to the *Celina* Court's holding, and thus, is dicta, see *Griswold Props, LLC v Lexington Ins Co*, 276 Mich App 551, 557-558; 741 NW2d 549 (2007) ("It is a well-settled rule that statements concerning a principle of law not essential to determination of the case are obiter dictum and lack the force of an adjudication."). This reasoning can be extended to the holding in *Besic*, where this Court did not address the fact that the plaintiff was acting in the course of business when he sustained his injury. *Besic*, 290 Mich App at 32.

Moreover, there is published caselaw expressly holding that that an employee does not need to be using the employer-furnished vehicle in the course of business for purposes of MCL 500.2114(3). In *State Farm Mut Auto Ins Co v Hawkeye-Security Ins Co*, 115 Mich App 675, 679-681; 321 NW2d 769 (1982), this Court specifically rejected the defendant's argument that MCL 500.3114(3) does not apply in situations where an injured employee used an employer-furnished vehicle for personal use that was outside the scope of the employee's employment:

> Defendant's interpretation would require an injured employee to establish, as a prerequisite to obtaining no-fault benefits, that his injuries occurred in the course of his employment. Such a potentially costly and dilatory procedure would be contrary to a principal purpose of the no-fault act, which is to facilitate the swift resolution of claims. Additionally, had the Legislature desired to limit the operation of § 3114(3) to injuries occurring in the course of employment, it would have been a simple matter to insert a sentence or phrase so providing.

> * * *

> Accordingly, we conclude that § 3114(3) of the no-fault act was meant to apply in any situation in which an employee is injured while occupying a vehicle owned by his employer, regardless of whether the injury occurred in the course of his employment. [(Citations omitted).]

Similarly, in *Auto Club Ins Ass'n v Maryland Cas Co*, 177 Mich App 40, 43; 441 NW2d 16 (1989), this Court again held:

> [MCL 500.3114(3)] contains no requirement that the injured person have possession or control of the vehicle. On the contrary, the statute expressly provides for recovery from the employer's insurer by mere "occupant[s]" of the vehicle. Further, the fact that the accident occurred on a social rather than on a business outing is beside the point in the determination of the applicability of the employer-owned vehicle exception. [(Second alteration in original).]

Thus, it is not dispositive that Beatrice was using the vehicle for personal reasons, not in the course of her business.

The relevant interplay of precedent is between *Adanalic* and *Besic*. In *Adanalic v Harco Nat Ins Co*, 309 Mich App 173, 191; 870 NW2d 731 (2015), this Court stated that "[a]n

independent contractor is not considered an 'employee' for purposes of the no-fault act." The relevant facts are as follows:

> [Plaintiff] had contracted with DIS Transportation (a nonparty to this action) to pick up, haul, and deliver various loads of cargo. On October 1, 2011, he was hauling an empty semi-trailer on his return to Grand Rapids from an out-of-state delivery. He accepted a DIS dispatch to a truck stop in Indiana for the purpose of removing loaded pallets from the disabled box truck and loading them into his semi-trailer. Both the truck and the semi-trailer were insured by defendant Harco under a policy that included Michigan no-fault coverage. The policy was issued to DIS. [Plaintiff] had Michigan no-fault insurance through defendant Millers under a policy issued to his wife. [*Id*. at 177.]

The plaintiff was injured while loading pallets from the disabled box truck into his semi-truck. *Id*. at 177-178. The Court used the economic realities test[3] to determine that the plaintiff was an independent contractor, and that the plaintiff's personal no-fault insurer was first in priority. *Id*. at 192-194. Notably, this Court did not address whether the plaintiff was a self-employed independent contractor. Regardless, had this Court discussed the issue of self-employment, it would not have changed the analysis because the plaintiff did not own the truck or semi-trailer for purposes of the no-fault act. *Id*. at 177 n 1. Under MCL 500.3114(3), "[a]n employee . . . who suffers accidental bodily injury while an occupant of a motor vehicle owned or registered by the employer, shall receive personal protection insurance benefits to which the employee is entitled from the insurer of the furnished vehicle." Thus, even if this Court had determined that the plaintiff was a self-employed independent contractor, it would not have mattered because he did not own the vehicle.

> Contrast *Adanalic* with *Besic*. The relevant facts of *Besic* are as follows:

> Besic, a Michigan resident, sustained personal injuries in a motor vehicle accident in Ohio. At the time of the accident, Besic was driving a tractor-trailer rig, hauling freight from Illinois to New York. Besic owned the tractor, registered and licensed the vehicle in Michigan, and leased it to MGR Express, Inc., pursuant to a "Contractor Operating Agreement" (COA). The COA identified Besic Express, a corporation solely owned by Besic, as the contractor and owner of the truck; however, Besic testified at his deposition that he owned the truck personally. [*Besic*, 290 Mich App at 21-22.]

This Court held that MCL 500.3114(3) applied because the plaintiff was a self-employed independent contractor. *Id*. at 32. "Consistently with the Michigan Supreme Court's analysis in *Celina*, 452 Mich at 89, the priority language in MCL 500.3114(3) extends to the self-employment

---

[3] The factors considered in the economic realities test are "(a) control of the worker's duties, (b) payment of wages, (c) right to hire, fire and discipline, and (d) the performance of the duties as an integral part of the employer's business towards the accomplishment of a common goal." *Adanalic*, 309 Mich App at 191 (quotation marks and citation omitted).

situation of Besic." *Id*. However, there was no discussion about what "self-employed" means. In the statement of facts, the Court notes that there was an inconsistency regarding who owned the truck: "The [Contractor Operating Agreement] identified Besic Express, a corporation solely owned by Besic, as the contractor and owner of the truck; however, Besic testified at his deposition that he owned the truck personally." *Id*. at 21-22. Regardless, in the discussion section, the Court stated that the plaintiff owned the truck before stating that the plaintiff was a self-employed independent contractor. *Id*. at 32. Thus, the plaintiff was both the employee and employer. Further, the plaintiff owned the truck, meaning that his employer owned the truck. *Id*. Accordingly, all the boxes were checked for MCL 500.3114(3) to apply, i.e., the plaintiff was an employee injured in a vehicle owned by his employer (himself).

In this case, there is no dispute that Beatrice was an independent contractor, which would preclude the application of MCL 500.3114(3) unless she was also self-employed. Under *Besic*, it appears that there are no qualifications to being self-employed. The only distinguishing fact between this case and *Besic* is that the plaintiff in *Besic* was the sole owner of Besic Express, although that fact does not seem to be of any consequence. Thus, Beatrice is considered a self-employed independent contractor.

Considering Beatrice as a self-employed independent contractor implicates MCL 500.3114(3), such that ACE would the insurer of highest priority. This conclusion furthers the public policy as stated in *Celina*:

> The cases interpreting [MCL 500.3114(3)] have given it a broad reading designed to allocate the cost of injuries resulting from use of business vehicles to the business involved through the premiums it pays for insurance. In addition, in cases like the instant one, requiring both insurers to contribute to the payment of benefits would run contrary to the overall goal of the no-fault insurance system, which is designed to provide victims with assured, adequate, and prompt reparations at the lowest cost to both the individuals and the no-fault system. Splitting the obligation to pay would result in duplicative administrative costs, by requiring several insurers to adjust a single claim. [*Celina*, 452 Mich at 89 (citations and footnote omitted).]

Because Beatrice was a self-employed independent contractor who was injured while occupying an employer-furnished vehicle, MCL 500.3114(3) applies.

III. ACE'S POLICY EXCLUSION

Citizens also argues that ACE's endorsement that purports to exclude coverage in this case is unenforceable because it conflicts with the statutory scheme of the no-fault act. We agree.

Again, this Court reviews a trial court's ruling on a motion for summary disposition de novo. *Petersen Fin, LLC*, 326 Mich App at 441. Issues of statutory construction, the interpretation and construction of insurance contracts, and a trial court's decision whether to grant equitable relief are also reviewed de novo. *Corwin v DaimlerChrysler Ins Co*, 296 Mich App 242, 253; 819 NW2d 68 (2012).

Citizens relies on this Court's decision in *Corwin*. In that case, the plaintiffs, John and Vera-Anne Corwin, were occupying a vehicle that was leased from the defendant Chrysler LLC and insured through DaimlerChrysler Insurance Company. *Corwin*, 296 Mich App at 248. John was a retiree of Chrysler and leased the vehicle through the Chrysler vehicle lease program. *Id*. John received a certificate of insurance, but John was not the named insured on the certificate. *Id*. Instead, the named insureds were DaimlerChrysler Corporation and its subsidiaries. *Id*. at 248-249. The policy contained an exclusion, similar to the one in this case, that excluded coverage "[t]o anyone entitled to Michigan no-fault benefits as a Named Insured under another policy." *Id*. at 249. The parties agreed that, absent reformation, Chrysler Insurance was not primarily liable under MCL 500.3114(1) because the plaintiffs were named insureds on a no-fault policy in their household, and neither were a named insured on the Chrysler Insurance policy. *Id*. at 256. This Court considered whether the Chrysler Insurance policy complied with the no-fault act and, if not, whether the policy must be reformed. *Id*.

This Court concluded that the policy was invalid under the no-fault act and required reformation because (1) Chrysler LLC and its subsidiaries, the named insureds, did not have an insurable interest in the vehicle, and (2) the policy contravened the legislative intent of the no-fault act. *Id*. at 257. First, this Court concluded that Chrysler and its subsidiaries did not have an insurable interest because they were not owners or registrants of the vehicle, did not have any insurable interest flowing from the protection of a person's health and well-being because they could not suffer accidental bodily injury, did not derive any benefit from the vehicle, and would not suffer any kind of loss from its damage or destruction. *Id*. at 258-260. Because Chrysler and its subsidiaries did not have an insurable interest, the policy was void as against public policy, leaving John in violation of his statutory duty to maintain security for the payment of insurance benefits. *Id*. at 260. This Court concluded that the policy must be reformed to be compatible with public policy so that there was an insurable interest belonging to the named insured. *Id*.

In addition, this Court concluded that the Chrysler Insurance policy violated the intent of the no-fault act by shifting primary liability for no-fault coverage. *Id*. at 262. This Court stated:

> More specifically, the policy contravenes the legislative intent of MCL 500.3114 and MCL 500.3115 of the no-fault act because the policy enables Chrysler Insurance to avoid primary liability for PIP benefits that are payable to injured people that Chrysler Insurance personally insures, i.e., the Corwins. Under the no-fault act, John is the "owner" of the Jeep Compass leased from Chrysler LLC because John leased the Jeep Compass for more than 30 days. Moreover, John purchased no-fault insurance for the Jeep Compass through Chrysler Insurance because the insurance premium was deducted from his monthly pension checks. Thus, Chrysler Insurance provided no-fault insurance to the Corwin household and was the Corwins' "personal insurer." Nevertheless, under the terms of its insurance policy, Chrysler Insurance avoids primary liability under MCL 500.3114. As previously discussed, Chrysler LLC and its United States subsidiaries are the named insureds under the Chrysler Insurance policy. Thus, Chrysler Insurance avoids primary liability for PIP benefits under MCL 500.3114 whenever the Corwins are a named insured in another no-fault policy in their household. Essentially, the Chrysler Insurance policy's designation of Chrysler LLC and its United States subsidiaries as the named insureds is a coordination-of-benefits

clause in disguise. The Chrysler Insurance policy relegates motor-vehicle owners to contingent beneficiaries as permissive users on their own insurance policies. [*Corwin*, 296 Mich App at 262-263 (citations omitted).]

This Court concluded that it would "not allow Chrysler Insurance to avoid the Legislature's intent that an injured person's personal insurer stand *primarily* liable for PIP benefits" and the policy had to be reformed "so that Chrysler Insurance is primarily liable . . . for PIP benefits in accordance with MCL 500.3114(1)." *Id*. at 263.

Consistent with *Corwin*, we determine that the exclusionary endorsement in the ACE policy is void because it contravenes the legislative intent of MCL 500.3114 and MCL 500.3115 by enabling ACE to avoid primary liability for PIP benefits that are payable to injured people that ACE personally insures, i.e., plaintiffs. Beatrice is the owner of the Cadillac and purchased no-fault insurance from ACE because a portion of the insurance premiums were deducted from her commissions. Thus, ACE provided no-fault insurance to plaintiffs and was their personal insurer. See *Corwin*, 296 Mich App at 262-263. However, under the terms of the policy, ACE avoids primary liability under MCL 500.3114 whenever plaintiffs are a named insured in another no-fault policy in their household.

Unlike *Corwin*, however, we need not reform the ACE policy. "[W]hen reasonably possible, this Court is obligated to construe insurance contracts that conflict with the no-fault act and, thus, violate public policy, in a manner that renders them compatible with the existing public policy as reflected in the no-fault act." *Id*. at 257 (quotation marks and citation omitted). As discussed above, Beatrice was a self-employed independent contractor who was injured while occupying an employer-furnished vehicle. Interpreted in light of the application of MCL 500.3114(3) and the void exclusionary endorsement, ACE, as the insurer of the employer-furnished vehicle, is the highest priority insurer. Accordingly, we remand for entry of judgment in favor of Citizens.

Reversed and remanded. We do not retain jurisdiction.

/s/ Elizabeth L. Gleicher
/s/ David H. Sawyer
/s/ Patrick M. Meter