*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# S T A T E   O F   M I C H I G A N

# C O U R T   O F   A P P E A L S

FLORIN TODUTI,

        Plaintiff-Appellee,

and

BEAUMONT HEALTH and MICHIGAN SPINE & BRAIN SURGEONS, PLLC,

        Intervening Plaintiffs,

v

PROGRESSIVE MICHIGAN INSURANCE COMPANY,

        Defendant-Appellee,

and

CHEROKEE INSURANCE COMPANY,

        Defendant-Appellant,

and

MICHIGAN AUTOMOBILE INSURANCE PLACEMENT FACILITY, a/k/a MICHIGAN ASSIGNED CLAIMS PLAN,

        Defendant.

UNPUBLISHED
September 2, 2021

No. 352716
Wayne Circuit Court
LC No. 18-008196-NF

Before: LETICA, P.J., and SERVITTO and M. J. KELLY, JJ.

PER CURIAM.

-1-

Defendant,[1] Cherokee Insurance Company, appeals as of right the trial court's order finding that defendant was first in priority for purposes of paying plaintiff, Florin Toduti's no-fault insurance benefits and granting summary disposition in favor of Progressive Michigan Insurance Company ("Progressive"). We affirm.

The facts in this matter are largely undisputed. On November 6, 2017, plaintiff was driving a semi-truck that he owned, and carrying a commercial load under an agreement with Universal, Mason & Dixon Intermodal ("Universal"), when he was involved in an accident. On that date, plaintiff owned three non-commercial vehicles that he had insured through Progressive. Progressive did not insure the semi-truck. Universal leased the truck from plaintiff[2] pursuant to a January 13, 2016 "independent contractor agreement" and had insurance on the semi-truck through defendant.

After the accident, plaintiff sought personal protection insurance (PIP) benefits from Progressive and defendant, and both denied responsibility for the benefits. Plaintiff thus filed a complaint on July 17, 2018, setting forth claims for first-party benefits as to both insurers. Plaintiff also named the Michigan Automobile Insurance Placement Facility (MAIPF) as a defendant, alleging that because there was a priority dispute, MAIPF was statutorily required to assign an insurer to immediately provide PIP benefits to plaintiff.[3]

Progressive moved for summary disposition pursuant to MCR 2.116(C)(10), arguing that because plaintiff was injured while operating a commercial vehicle at the time of the accident, MCL 500.3114(3) controls his claim and that the insurer of the semi-truck, defendant, is first in priority for payment of plaintiff's PIP benefits. Defendant responded that plaintiff was an independent contractor rather than an employee and that, as such, Progressive is first in priority to pay plaintiff's no-fault benefits. At the conclusion of a hearing on Progressive's motion for summary disposition, the trial court entered an opinion and order granting Progressive's motion for summary disposition. The court opined that a person can be a self-employed independent contractor and thereby retain the status of both employer and employee. The trial court noted that there was no dispute plaintiff was an occupant of the commercial semi-truck and was acting in the scope and course of his employment at the time of the accident. The trial court further found that if a person is self-employed, that person is necessarily both employer and employee for purposes of MCL 500.3114(3). According to the trial court, even if plaintiff was an independent contractor, he was still necessarily an employee of himself, such that MCL 500.3114(3)'s employer-employee exception to MCL 500.3114(1)'s general priority provision applies and defendant was highest in

---

[1] Because Cherokee Insurance Company is the only defendant involved in this appeal, "defendant" shall refer to Cherokee Insurance Company only.

[2] The independent contractor agreement was actually executed between Universal and plaintiff acting on behalf of Toduti 4, LLC, a sole proprietorship owned and operated solely by plaintiff and which employed plaintiff as its sole employee.

[3] Beaumont Health and Michigan Spine and Brain Surgeons, PLLC were permitted to intervene as assignees of plaintiff concerning medical services they provided to plaintiff for injuries he incurred in the November 6, 2017 accident.

priority for payment of plaintiff's PIP benefits. After the remaining matters in this case were resolved, defendant filed the instant appeal.

On appeal, defendant contends that the trial court erred in finding that plaintiff was an employee rather an independent contractor to hold that (1) the exception set forth in MCL 500.3114(3) applied, and (2) that defendant was thus first in priority for payment of plaintiff's PIP benefits. We disagree.

We review motions for summary disposition de novo. *Coblentz v City of Novi*, 475 Mich 558, 567; 719 NW2d 73 (2006). In reviewing a motion brought under MCR 2.116(C)(10), a court tests the factual support of a claim by reviewing the substantively admissible evidence submitted by the parties and reviews the evidence and all legitimate inferences in the light most favorable to the nonmoving party. *Id*. at 567-568. "When a motion under subrule (C)(10) is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his or her pleading, but must, by affidavits or as otherwise provided in this rule, set forth specific facts showing that there is a genuine issue for trial." *Bernardoni v City of Saginaw*, 499 Mich 470, 473; 886 NW2d 109 (2016), quoting MCR 2.116(G)(4). This rule requires the adverse party to set forth specific facts at the time of the motion showing a genuine issue for trial and if the proffered evidence fails to establish a genuine issue regarding any material fact, the moving party is entitled to judgment as a matter of law. *Id.*

We review de novo questions of statutory interpretation. *PNC Nat'l Bank Ass'n v Dep't of Treasury*, 285 Mich App 504, 505; 778 NW2d 282 (2009). As stated in *Wickens v Oakwood Healthcare Sys*, 465 Mich 53, 60; 631 NW2d 686 (2001):

> The paramount rule of statutory interpretation is that we are to effect the intent of the Legislature. To do so, we begin with the statute's language. If the statute's language is clear and unambiguous, we assume that the Legislature intended its plain meaning, and we enforce the statute as written. In reviewing the statute's language, every word should be given meaning, and we should avoid a construction that would render any part of the statute surplusage or nugatory. [(internal citations omitted)]

MCL 500.3101(1) provides, in relevant part that "the owner or registrant of a motor vehicle required to be registered in this state shall maintain security for payment of benefits under personal protection insurance and property protection insurance as required under this chapter, and residual liability insurance . . . ." Pursuant to MCL 500.3101(3)(*l*)(i) and (iii), an "owner" of a motor vehicle can include either an entity leasing the vehicle or an entity holding legal title to the vehicle, or both.

There appears to be no dispute that Universal was an "owner" of the semi-truck because of its long-term lease of the vehicle from plaintiff. There also appears to be no dispute that plaintiff was injured when the semi-truck he was driving was involved in an accident, and that he was entitled to no-fault insurance benefits under the no-fault act, MCL 500.3101, *et seq*. The only issue for our resolution, then, is which insurer is first in priority (i.e., responsible) for the payment of plaintiff's no-fault benefits.

Priority among insurers for the payment of no-fault benefits is set forth in MCL 500.3114, in relevant part, as follows:

(1) Except as provided in subsections (2), (3), and (5), a personal protection insurance policy described in section 3101(1) applies to accidental bodily injury to the person named in the policy, the person's spouse, and a relative of either domiciled in the same household, if the injury arises from a motor vehicle accident. A personal injury insurance policy described in section 3103(2) applies to accidental bodily injury to the person named in the policy, the person's spouse, and a relative of either domiciled in the same household, if the injury arises from a motorcycle accident. If personal protection insurance benefits or personal injury benefits described in section 3103(2) are payable to or for the benefit of an injured person under his or her own policy and would also be payable under the policy of his or her spouse, relative, or relative's spouse, the injured person's insurer shall pay all of the benefits up to the coverage level applicable under section 3107c3 to the injured person's policy, and is not entitled to recoupment from the other insurer.

\*\*\*

(3) An employee, his or her spouse, or a relative of either domiciled in the same household, who suffers accidental bodily injury while an occupant of a motor vehicle owned or registered by the employer, shall receive personal protection insurance benefits to which the employee is entitled from the insurer of the furnished vehicle.

Thus, one injured in an automobile accident is generally required to seek compensation from his own no-fault insurer, regardless of whether that person's insured vehicle is involved in the accident. *Farmers Ins Exch v AAA of Michigan*, 256 Mich App 691, 695; 671 NW2d 89 (2003). However, the Legislature set forth exceptions to that general rule, including the one found at MCL 500.3114(3). That exception provides, in general, that an employee who suffers accidental bodily injury while an occupant of a motor vehicle owned or registered by the employer is to receive PIP benefits from the insurer of the furnished vehicle. Relevant to the instant matter, the exception set forth at MCL 500.3114(3) also applies when an injured person is self-employed and operating an insured vehicle. *Celina Mut Ins Co v Lake States Ins Co*, 452 Mich 84, 85-86; 549 NW2d 834 (1996). Importantly, the cases interpreting MCL 500.3114(3) "have given it a broad reading designed to allocate the cost of injuries resulting from use of business vehicles to the business involved through the premiums it pays for insurance." *Id*. at 89.

"For purposes of MCL 500.3114(3), whether an injured party was an 'employee' is determined by applying the 'economic reality test.' " *Adanalic v Harco Nat Ins Co*, 309 Mich App 173, 190–191; 870 NW2d 731 (2015). Under that test, four factors are to be considered: (a) who has control of the worker's duties, (b) who pays the worker's wages (c) who has the right to hire, fire and discipline and (d) whether the performance of the worker's duties are an integral part of the employer's business toward the accomplishment of a common goal. *Id*. at 191. "This test considers the totality of the circumstances surrounding the work performed. No single factor is controlling and, indeed, the list of factors is nonexclusive and other factors may be considered as each individual case requires." *Rakowski v Sarb*, 269 Mich App 619, 625; 713 NW2d 787(2006)

(citation omitted).  In applying the economic reality factors, the totality of the circumstances surrounding the work must be examined.  *James v Commercial Carriers, Inc*, 230 Mich App 533, 537; 583 NW2d 913 (1998).

Notably, one can have dual or co-employers.  In those cases, "the employee typically has a readily identifiable 'legal' or 'actual' employer . . . and the dispositive question is whether, under the economic realities test, a second entity can also be classified as an employer . . . ."  *Clark v United Techs Auto, Inc*, 459 Mich 681, 689; 594 NW2d 447 (1999).

Applying the economic reality factors to this matter, it appears that plaintiff was an employee of Universal.  As to factor (a), who has control of the worker's duties (*Adanalic*, 309 Mich App at 191), we first acknowledge that there are a few facts that would weigh in favor of finding that plaintiff is an independent contractor.  The agreement between plaintiff and Universal is titled "Independent Contractor Agreement" and specifies in several places throughout that plaintiff is an independent contractor and not an employee of Universal.  Plaintiff also testified at deposition that he could decide which routes to take to pick up and deliver loads and could refuse to take a load if he wanted.  However, the above facts carry minimal weight when gauged against the remaining facts.

Plaintiff testified that the dispatch at Universal acted in a supervisory capacity over him and that there was a "big manager" as well.  Plaintiff testified that Universal's dispatch "would control all the routes and everything and if we get on time and if we need to pick up another load and everything."  Plaintiff testified that while he was driving the semi-truck under the agreement with Universal he was not allowed to drive or carry loads for other companies and could not use the semi-truck for any purpose but Universal's business.  He kept the semi-truck at Universal's company yard and the semi-truck contained Universal's logo.  According to plaintiff, there was a computer log in the semi-truck provided by Universal, to keep records on everything to do with the semi-truck, such as when it entered and exited the Universal yard.

Further, the agreement could be terminated by either party, for any reason, indicating an at-will employment agreement.  In addition, the agreement could be unilaterally terminated specifically if any agent or employee of Toduti 4 LLC "violates, or fails to fully adhere to and perform the requirements of" any of Universal's customers, any applicable federal, state, local, and foreign authorities, highway safety and other regulations, and Universal's "operating authority."  The agreement also provides Universal with the right to review all of Toduti 4 LLC's documents and records relating to the use of the semi-truck and the services provided under the agreement and the right to disqualify any driver provided by Toduti 4 LLC in the event the driver, among other things, fails to meet Universal's "minimum qualification standards."  The agreement also requires: Toduti 4 LLC and any of its drivers to comply with Universal's drug and alcohol policy, including random drug and alcohol tests; Toduti 4 LLC and any of its drivers to comply with Universal's "policies and procedures and any subsequent revisions thereto, which will be provided by Universal;" that if Universal requests it, Toduti 4 LLC must obtain and install a communication system that is compatible with the system used by Universal for each unit leased to Universal; that Toduti 4 LLC not have any passenger in the semi-truck without Universal's consent and, before any passenger is allowed, Toduti 4 LLC must submit a release of liability to Universal and Toduti 4 LLC must ensure any passenger has accident insurance in amounts required by Universal at its sole discretion; that while Universal will obtain insurance on the semi-truck, it

will take the premium cost out of Toduti 4 LLC's compensation; that Universal determine that any insurance policies procured by Toduti 4 LLC are obtained solely from A.M. Best "A" rated companies and that the policies are acceptable, and; that while Toduti 4 LLC may authorize Universal to facilitate bobtail and physical damage insurance on Toduti 4 LLC's behalf (which it did), Universal would charge that expense back to Toduti 4 LLC.

The above facts, in totality, indicate sufficient control over Toduti 4 LLC and its driver's duties to establish that Toduti 4 LLC and plaintiff were employees of Universal. This factor thus weighs in favor of plaintiff being an employee.

As to factor (b), who pays the worker's wages (*Adanalic*, 309 Mich App at 191), plaintiff testified that Universal paid him weekly and the pay varied, based on how many loads he transported. Plaintiff was paid 69% of the adjusted gross revenue of loads. Plaintiff testified that Universal paid by depositing funds on a Comdata card. The Comdata card was, according to plaintiff, linked to Universal and could be obtained only through Universal. Plaintiff testified that he transferred money off the card and into his personal bank account.[4]

Plaintiff also testified that Universal issued him a 1099 each year. The 1099 form provided shows that the 1099 was issued to Toduti 4 LLC. Plaintiff testified, however, that he filed taxes in his own name only and all income from Universal was reported on his personal taxes. Plaintiff further testified that he worked only for Universal and was prohibited, by their agreement, from using the semi-truck to work for another company at the same time. The agreement does, in fact, provide that Universal had exclusive use and possession of Toduti 4 LLC's (which, again is solely owned and operated by plaintiff and of which plaintiff is the only employee) semi-truck. Universal thus paid wages to Toduti 4 LLC/plaintiff and this factor favors plaintiff being an employee.

Concerning factor (c), who has the right to hire, fire and discipline (*Adanalic*, 309 Mich App at 191), plaintiff testified that he had to go through a month and a half of training with Universal before he was allowed to drive for them. He also had to go to a class through Universal, had to undergo a driving test and inspection by Universal, and had to drive with another Universal driver for a time before he could drive on his own. While the agreement provides that Toduti 4 LLC could obtain other drivers, as previously indicated, Universal had the right to disqualify drivers. Our Supreme Court has equated the ability to remove an unsatisfactory worker with the right to hire, fire, and discipline. See *Kidder v Miller-Davis Co*, 455 Mich 25, 45; 564 NW2d 872 (1997).

Plaintiff also testified that he could not get another driver for the semi-truck because the truck was linked to his name with Universal. Because Universal could determine whether any driver Toduti 4 LLC sought to use for Universal met their qualifications, required specific training and the following of Universal's policies, and could deny a driver, Universal technically had the ultimate right to "hire" drivers. It also had the right to terminate the agreement due to what it

---

[4] We were not provided documentary evidence concerning the Comdata card information. It is thus not clear whether the card was in Toduti 4 LLC's name or plaintiff's name.

deemed improper performance by Toduti 4 LLC and, by extension, plaintiff as Toduti 4 LLC's sole employee driver. This factor thus weighs in favor of plaintiff being an employee.

Finally, with respect to factor (d), whether the performance of the worker's duties is an integral part of the employer's business toward the accomplishment of a common goal (*Adanalic*, 309 Mich App at 191), plaintiff was only one of, by his guess, hundreds, of drivers used by Universal. The *Adanalic* Court found that a truck driver, being only one of numerous drivers used by a trucking company, and being free to terminate the relationship at any time or refuse to haul any load dispatched by the trucking company "cannot be said to be 'integral' to [the trucking company's] general goal, presumably making a profit by using contracted drivers to haul cargo." *Id*. at 194. We, however, find differently. "Under the fourth factor, the question is not whether the particular worker is integral to the business but instead whether the *type of work* is integral to the business." *Duckworth v Cherokee Ins Co*, 333 Mich App 202; __ NW2d __ (2020). In our estimation, plaintiff's duties as a truck driver for Universal appear to be an integral part of the accomplishment of common goals, namely: providing trucking services for income.

In sum, application of the economic realities factors favors finding that plaintiff was an employee and that defendant was therefore first in priority for payment of plaintiff's PIP benefits. Another factor we consider (we may consider other factors as each individual case requires, *Rakowski*, 269 Mich App at 625), is that Universal charged Toduti 4 LLC and/or plaintiff for the insurance it procured on the semi-truck through defendant. Ultimately, then, plaintiff paid for the insurance coverage, including PIP benefits, that defendant now argues does not apply.

The relevant caselaw also supports a finding that defendant was first in priority. In 1996, our Supreme Court in *Celina*, 452 Mich 84, was called upon to determine whether MCL 500.3114(3) applies when the injured person is operating a vehicle in the course of self-employment. In that case, the injured person was driving a wrecker owned by him personally and was acting for a company of which he was the owner and sole proprietor when he was involved in an accident. *Id*. at 86. The wrecker was insured by Celina Mutual Insurance Company and the injured party had personal vehicles insured by another company. *Id*. at 87. The Court found that Celina was responsible for the payment of the insured person's PIP benefits because it "believe[d] that it is most consistent with the purposes of the no-fault statute to apply § 3114(3) in the case of injuries to a self-employed person." *Id*. at 89.

*In Besic v Citizens Ins Co of the Midwest*, 290 Mich App 19; 800 NW2d 93 (2010), the plaintiff was hauling freight in a tractor-trailer when he was involved in an out-of-state accident and sustained injuries. The plaintiff owned the tractor-trailer and leased it to a trucking company under a contractor operating agreement between a corporation owned solely in the plaintiff's name and the trucking company. *Id*. at 21-22. The plaintiff testified that he owned the tractor-trailer personally, not through the corporation. The trucking company obtained liability insurance on the tractor-trailer and the plaintiff obtained an insurance policy through a different insurer to insure the tractor and driver of the tractor-trailer when it was being operated without cargo or a trailer (a "bobtail" policy). The plaintiff had household vehicles that he insured through a third insurer. *Id*. at 22. The trial court found that the insurer providing the bobtail insurance policy was responsible for the payment of the plaintiff's no-fault benefits and this Court affirmed. *Id*. at 21. This Court noted that the bobtail policy included an endorsement for PIP benefits but contained provisions stating that liability coverage did not apply if the covered auto was used "in the business of anyone

to whom it is leased or rented if the lessee has liability insurance sufficient to pay for damages" and that "Michigan Personal Injury and Property Protection coverages do not apply to 'bodily injury' or 'property damage' resulting from the operation, maintenance, or use of the covered 'auto' in the business of anyone to whom it is leased or rented *if the lessee has Michigan Personal Injury and Property Protection coverages on the 'auto*.' " *Id*. at 25 (emphasis in original). This Court determined that because the trucking company, the "lessee" of the tractor-trailer, did not obtain Michigan personal injury or property protection for the tractor-trailer (the plaintiff was using the tractor-trailer in Ohio at the time of the accident, which does not have a no-fault liability scheme), the stated exclusion did not apply and that the bobtail policy thus provided coverage for the plaintiff's PIP benefits.

This Court further addressed the bobtail insurer's argument that the insurer of the plaintiff's personal vehicles shared the responsibility for the plaintiff's PIP benefits because it stood in the same order of priority. This Court stated:

> [The plaintiff] owned the truck and worked as a self-employed independent contractor for [the trucking company]. Consistently with the Michigan Supreme Court's analysis in *Celina* [*Mutual Ins Co v Lake States Ins Co*] 452 Mich [84] at 89, 549 NW2d 834 [(1996)], the priority language in MCL 500.3114(3) extends to the self-employment situation of the plaintiff. With respect to the additional language comprising MCL 500.3114(3), [the plaintiff] suffered "accidental bodily injury while an occupant of a motor vehicle owned or registered by [his] employer," given that [the trucking company] had leased [the plaintiff's] truck. MCL 500.3101(2)(h) (including in its definition of "owner" "[a] person renting a motor vehicle or having the use thereof, under a lease or otherwise, for a period that is greater than 30 days"). Because MCL 500.3114(3) applies to the undisputed facts of this case, it dictates that [the plaintiff] "shall receive personal protection insurance benefits to which [he] is entitled from the insurer of the furnished vehicle." In light of the fact that only [the bobtail insurer] extended PIP benefits to the truck involved in [the plaintiff's] accident, it has first priority to pay [the plaintiff's] first-party benefits. [*Id*. at 32]

In *Duckworth v Cherokee Ins Co*, 333 Mich App 202, the plaintiff was injured when he lost control of the semi-truck he was driving while driving a load of cargo through Arkansas. The truck was owned by a trucking company that had contracted with the plaintiff to haul and deliver goods for it. *Id*. at 207. The trucking company had a policy of insurance with Cherokee on the tractor-truck involved in the accident and plaintiff sued Cherokee when it refused to pay PIP benefits. *Id*. at 208. Cherokee moved for summary disposition, arguing that the plaintiff was an independent contractor and not an employee of the trucking company, such that MCL 500.3114(3) did not apply and the plaintiff's personal no-fault insurer was first in priority for payment of the plaintiff's PIP benefits. *Id*. The trial court agreed. *Id*. at 209.

On appeal, this Court reversed. We found that application of the economic reality factors weighed in favor of a conclusion that the plaintiff was an employee of the trucking company. *Id*. at 214-216. While we noted that the payments to the plaintiff indicated an independent contractor relationship, the remaining three economic reality factors weighed in favor of finding an employer-

employee relationship. *Id*. We noted that the trucking company had significant control over the plaintiff's duties, including requiring the plaintiff to follow all guidelines established by the trucking company, dictating the route the plaintiff was to take when hauling freight. *Id*. at 214. We also took into consideration that the agreement was an at-will employee relationship, that the plaintiff was to undergo a drug test and submit to random drug tests, was required to complete "new hire" paperwork, and that the plaintiff's work as a truck driver was integral to the trucking company's business.[5] *Id*. at 215-216. In sum:

> [w]hen all of the relevant factors are considered, the economic reality test clearly shows that an employee-employer relationship existed between plaintiff and Speed Express for purposes of the no-fault act. Accordingly, the trial court erred by determining that plaintiff was not an employee under MCL 500.3114(3). Because that subsection applies, Cherokee is first in priority to pay PIP benefits to plaintiff." [*Id*. at 219]

More recently, and much more significantly, facts and arguments nearly identical with the ones at issue here were addressed in *Miclea v Cherokee Ins Co*, __ Mich App __; __ NW2d __ (2020).[6] In that case, the plaintiff was injured when he slipped and fell while putting antifreeze in his tractor-trailer. *Id*., slip op at 1. At the time of the accident, "the plaintiff was performing truck-driving services under an independent-contractor agreement with Universal Am-Can, Ltd. (Universal)." *Id*. The plaintiff held legal title to the tractor-trailer and Universal leased the truck from him. *Id*. Universal maintained business insurance through Cherokee. *Id*.

In the trial court, Cherokee moved for summary disposition, contending that the plaintiff was an independent contractor such the insurer of the plaintiff's personal vehicles was first in priority for payment of the plaintiff's PIP benefits pursuant to MCL 500.3114(1) and (3). *Id*. Cherokee posited that *Adanalic, supra*, was the sole case controlling the outcome of the matter, whereas the insurer of the plaintiff's personal vehicles contended that *Celina* and *Besic*, *supra*, controlled. *Miclea*, slip op at 2. The trial court agreed with Cherokee and granted summary disposition in Cherokee's favor. *Id*. On appeal, however, this Court reversed. This Court determined that *Celina*, *Besic*, and *Adanalic* could be harmonized. *Id*. slip op at 3. We noted that in *Celina*, our Supreme Court unambiguously established that a person who is self-employed is an employee of himself such that he can be both an employer and employee at the same time. *Miclea*, slip op. at 4. We also noted that in *Besic*, *supra*, this Court also determined that one could be an

---

[5] The *Duckworth* Court also considered a more comprehensive list of eight factors "for determining the nature of the existing relationship between a given employer and employee" stated in *McKissic v Bodine*, 42 Mich App 203, 208-209; 201 NW2d 333 (1972), a worker's compensation case. We do not believe those factors are necessarily relevant in the current situation.

[6] While defendant encourages this Court to disregard *Duckworth* and *Miclea*, both cases are published decisions of this Court and we are thus bound to follow their holdings as binding precedent. MCR 7.215(J)(1).

independent contractor while also retaining the status of both employer and employee. *Miclea*, slip op at 4.

> Both cases are holdings as a matter of law: if a person is self-employed, that person is necessarily both employer and employee for purposes of MCL 500.3114(3). Therefore, if [plaintiff] is an independent contractor of [Universal], then [plaintiff] is necessarily an employee of himself. [*Miclea*, slip op at 4].

This Court recognized that in *Adanalic*, 309 Mich App at 191, we stated that an independent contractor is not an employee for purposes of the no-fault act, but pointed out that:

> *Adanalic* clearly addressed only whether a person could simultaneously be an employee and an independent contractor of the same entity at the same time. Furthermore, *Adanalic* is consistent with *Celina* and *Besic*. In the latter cases, the injured parties owned the vehicles in which they were injured. *Celina*, 452 Mich at 86 [549 NW2d 834]; *Besic*, 290 Mich App at 21 [800 NW2d 93]. In *Adanalic*, the injured party owned a truck, but his injuries involved his occupancy of a semi-trailer that he did not own. *Adanalic*, 309 Mich App at 177-178 [;870 NW2d 731]. In all three cases, the courts were called upon to determine whether an owner of the occupied vehicle employed the injured party. Because the injured party in *Adanalic* did not own the vehicle in which he was injured, his self-employment status was irrelevant. [*Miclea*, slip op at 4.]

This Court therefore rejected Cherokee's claim that an independent contractor of one entity cannot simultaneously be an employee of another entity, including himself. *Id*. We also indicated that it appeared the Legislature intended, by enacting MCL 500.3114(3), "to shift the burden of providing PIP benefits to the insurers of vehicles in certain commercial contexts, probably because those insurers will be in a better position to evaluate the risks against which they are insuring" and "[i]f the case law had left any doubt, we would therefore resolve that doubt in favor of deeming the insurer of the commercial vehicle to have a higher priority." *Id*. The *Miclea* Court thus held that:

> there is no need to determine which of *Celina*, *Besic*, and *Adanalic* "controls" over the others, because all three cases can be harmonized. A person cannot be an employee and independent contractor of the same entity at the same time. However, being an independent contractor of one entity does not preclude a person from simultaneously being an employee of another entity, which can include one's self. On these facts, plaintiff was not an employee of Universal, but he was an employee of himself. Because plaintiff also "owned" the vehicle, MCL 500.3114(3) applies. Because Cherokee insured the vehicle, it is the insurer of highest priority. [*Id*. slip op at 5 (footnote omitted)]

Here, we are presented with facts and circumstances almost identical with those addressed in *Miclea*. Indeed, the contract between the parties in *Miclea* may have been the same one used in this case, given that Universal was the trucking company, and defendant was the insurance company involved. Plaintiff here owned the semi-truck involved in the accident, either personally or through his sole proprietorship, Toduti 4 LLC. Universal leased the semi-truck through a long-term lease, so was also an owner of the semi, pursuant to MCL 500.3101(3)(*l*)(i). Universal

obtained an insurance policy on the semi-truck, which included PIP benefits, through defendant. While Progressive insured plaintiff's personal vehicles, it cannot be said that Progressive or plaintiff anticipated, or should anticipate, that Progressive would be insuring against injuries plaintiff received while in the course of driving a semi-truck while delivering loads for Universal (or anyone else) for a commercial purpose.

Plaintiff was self-employed by Toduti 4, LLC as its sole employee and Universal had an agreement to use the semi-truck and Toduti 4 LLC's trucking services. Plaintiff could be seen as being an employee of both Toduti 4, LLC and Universal, by virtue of the agreement between Toduti 4 LLC and Universal and considering that plaintiff was the sole proprietor of Toduti 4 LLC and its only employee. Even if plaintiff was deemed an independent contractor, in *Besic*, *supra*, and *Miclea*, *supra*, this Court concluded that MCL 500.3114(3) applied to the situation of an injured person who owned the vehicle involved and who worked as a self-employed independent contractor. Thus, the trial court properly found that defendant is first in priority for purposes of plaintiff's no-fault benefits.

Affirmed.


/s/ Anica Letica
/s/ Deborah A. Servitto
/s/ Michael J. Kelly