*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

DJERDJ DJELJAJ, also known as GEORGE MAX KOLA,

UNPUBLISHED
May 18, 2023

Plaintiff-Appellant,

v

No. 360314
Macomb Circuit Court
LC No. 2021-003757-NF

AMERICAN ALTERNATIVE INSURANCE CORPORATION,

Defendant-Appellee.

Before: PATEL, P.J., and CAVANAGH and REDFORD, JJ.

PER CURIAM.

In this action for personal protection insurance (PIP) benefits under the no-fault act, MCL 500.3101 et seq., plaintiff appeals as of right an order granting summary disposition under MCR 2.116(C)(10) in favor of defendant.[1]  Plaintiff argues that the trial court erred because there was at least a question of fact regarding the availability of PIP benefits under two parked-vehicle exceptions, to wit: MCL 500.3106(1)(b) and (c).  We agree with plaintiff's argument that the trial court erred with respect to MCL 500.3106(1)(b), and decline to address plaintiff's unpreserved argument regarding subsection (1)(c).  We reverse and remand for further proceedings.

## I.  BACKGROUND

This case arises from injuries sustained by plaintiff in February 2019.  Plaintiff went to a medical center for treatment of symptoms unrelated to the injuries at issue in this case.  The facility was unequipped to diagnose plaintiff's complaints and opted to transfer him to a hospital.  Plaintiff testified that two emergency medical technicians (EMTs) came inside with a stretcher, strapped

---

[1] In the same order, the trial court denied summary disposition under MCR 2.116(C)(7).  Defendant initiated a cross-appeal challenging the partial denial of summary disposition, but the cross-appeal has since been dismissed by stipulation.  *Djeljaj v American Alternative Ins Co*, unpublished order of the Court of Appeals, entered August 9, 2022 (Docket No. 360314).

-1-

him onto it, and wheeled him outside.  The ambulance door was open, and the female EMT attempted to push him inside, head first.  In the process, the stretcher overturned and plaintiff struck the pavement with his head and shoulder.

A report from the ambulance company described the incident similarly, explaining that one of the EMTs attempted to lift the stretcher into the vehicle, but struggled to lift it high enough.  The second EMT came to the first EMT's assistance and attempted to lift the stretcher further from the side.  This maneuver caused the stretcher to tilt and ultimately flip onto its side, with plaintiff still attached.  Plaintiff was purportedly injured in the fall.

Plaintiff sued defendant to recover PIP benefits.  In lieu of answering the complaint, defendant moved for summary disposition.  Defendant explained that a related case brought by one of plaintiff's medical providers had recently been dismissed because the court determined that plaintiff's injuries were not compensable under MCL 500.3106(1).  Defendant asked the court to grant summary disposition under MCR 2.116(C)(7) on the basis of res judicata or under MCR 2.116(C)(10) because of the same absence of material factual dispute that led to summary disposition in the provider case.  Plaintiff opined that res judicata was inapplicable for several reasons and that he had a viable claim for benefits under MCL 500.3106(1)(b).  The trial court agreed that res judicata did not bar this action, but granted summary disposition under MCR 2.116(C)(10) for the same reasons it announced in the provider action.  The trial court granted summary disposition in the provider case because it concluded that MCL 500.3106(1)(b) did not apply and because the provider in that case—and, by implication, plaintiff in this case—did not adequately brief the transportational function and causal relationship requirements for liability under a parked-vehicle exception.

## II.  PRESERVATION AND STANDARDS OF REVIEW

Preliminarily, we note that an issue must generally be raised before or decided by the trial court to preserve appellate review.  *Glasker-Davis v Auvenshine*, 333 Mich App 222, 227; 964 NW2d 809 (2020).  Plaintiff's claim of error regarding MCL 500.3106(1)(b) was properly preserved, but his argument regarding MCL 500.3106(1)(c) is being raised for the first time on appeal.  In civil litigation, "Michigan generally follows the 'raise or waive' rule of appellate review," under which failure to timely raise an issue before the trial court constitutes waiver of that issue on appeal.  *Walters v Nadell*, 481 Mich 377, 387; 751 NW2d 431 (2008).  Although we have discretion to overlook preservation requirements under appropriate circumstances, *Smith v Foerster-Bolser Const, Inc*, 269 Mich App 424, 427; 711 NW2d 421 (2006), we decline to do so in this case.

We review de novo a trial court's summary disposition ruling.  *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 159; 934 NW2d 665 (2019).  A motion brought under MCR 2.116(C)(10) tests the factual sufficiency of the claim.  *Id*. at 160.  The standard of review for such motions is well settled:

> In evaluating a motion for summary disposition brought under this subsection, a trial court considers affidavits, pleadings, depositions, admissions, and other evidence submitted by the parties, MCR 2.116(G)(5), in the light most favorable to the party opposing the motion.  Where the proffered evidence fails to establish a

genuine issue regarding any material fact, the moving party is entitled to judgment as a matter of law. [*Trueblood Estate v P&G Apartments, LLC*, 327 Mich App 275, 284; 933 NW2d 732 (2019), quoting *Maiden v Rozwood*, 461 Mich 109, 120; 597 NW2d 817 (1999).]

"A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ." *West v Gen Motors Corp*, 469 Mich 177, 183; 665 NW2d 468 (2003).

This Court also reviews issues involving statutory interpretation de novo. *Kemp v Farm Bureau Gen Ins Co of Mich*, 500 Mich 245, 252; 901 NW2d 534 (2017). The primary goal of statutory interpretation is to give effect to the Legislature's intent as conveyed by the plain language of the statute. *Id*. "When a statute's language is unambiguous, the Legislature must have intended the meaning clearly expressed, and the statute must be enforced as written." *Id*. (quotation marks and citation omitted).

## III. ANALYSIS

Subject to the provisions of the no-fault act, an insurer that provides PIP coverage "is liable to pay benefits for accidental bodily injury arising out of the ownership, operation, maintenance or use of a motor vehicle as a motor vehicle . . . ." MCL 500.3105(1). But MCL 500.3106(1) provides that "[a]ccidental bodily injury *does not* arise out of the ownership, operation, maintenance, or use of a parked vehicle as a motor vehicle" (emphasis added), and thus does not give rise to PIP benefits under MCL 500.3105(1), unless an exception applies. The so-called parked-vehicle exclusion does not apply if any of the following exceptions occur:

(a) The vehicle was parked in such a way as to cause unreasonable risk of the bodily injury which occurred.

(b) Except as provided in subsection (2),[2] the injury was a direct result of physical contact with equipment permanently mounted on the vehicle, while the equipment was being operated or used, or property being lifted onto or lowered from the vehicle in the loading or unloading process.

(c) Except as provided in subsection (2), the injury was sustained by a person while occupying, entering into, or alighting from the vehicle. [MCL 500.3106(1)(a) through (c).]

In determining whether PIP benefits are available for injuries related to parked motor vehicles, courts must first consider whether the claimant's "conduct fits one of the three exceptions of subsection 3106(1)." *Kemp*, 500 Mich at 253 (quotation marks and citation omitted). "Second, the claimant must show that the injury arose out of the ownership, operation, maintenance, or use

---

[2] MCL 500.3105(2) concerns injuries that qualify for worker's compensation benefits and is not applicable in this case.

of the parked motor vehicle as a motor vehicle[.]" *Id*. (quotation marks, citation, and emphasis omitted; alteration in original). Lastly, "the claimant must demonstrate that the injury had a causal relationship to the parked motor vehicle that is more than incidental, fortuitous, or but for." *Id*. (quotation marks and citation omitted).

The principal point of contention in this appeal is whether the trial court erred by concluding that MCL 500.3106(1)(b) did not apply to the circumstances at issue. We agree with plaintiff that the trial court's analysis of this exception, incorporated from its decision in a related provider lawsuit, was flawed and inconsistent with the plain statutory language and controlling caselaw.

The trial court's decision was premised on the Supreme Court's discussion of this statutory exception in *Kemp*, 500 Mich at 254-256. In that case, the plaintiff, upon arriving home from work and exiting his vehicle, reached into the backseat to retrieve several personal items. *Id*. at 249. He sustained an injury as he removed the items from the vehicle. *Id*. The Court opined that there was a question of fact as to whether the plaintiff was injured as he lowered the items from his vehicle during the unloading process. *Id*. at 254. The Court began by noting that the items the plaintiff was retrieving—a briefcase, overnight bag, thermos, and lunch box—constituted property because they were "things 'owned or possessed' by [the] plaintiff." *Id*. Additionally, the plaintiff's testimony regarding the sudden onset of his injury upon twisting to set the items down was sufficient to create a factual question regarding whether the injury was a direct result, or in other words caused by, his contact with the property being loaded or unloaded. *Id*. at 255.

The trial court interpreted this precedent as requiring plaintiff to prove that (1) he owned or possessed the property, (2) he was in physical contact with the property and either lifting it from or onto the vehicle, and (3) he was injured due to physical contact with that property. Concerning the first "requirement," the trial court misconstrued *Kemp*. The critical issues before the *Kemp* Court were whether the plaintiff's injury was closely related to the transportational function of his motor vehicle and whether the injury had the requisite causal relationship to the parked motor vehicle. *Id*. at 251. There is no indication that whether the plaintiff's personal items constituted property was ever in dispute. Rather, it appears that the Supreme Court commented on that matter in the interest of complete analysis and without any intention to establish a binding rule of law *requiring* that the property at issue be owned or possessed by the plaintiff. See *Griswold Props, LLC v Lexington Ins Co*, 276 Mich App 551, 557-558; 741 NW2d 549 (2007) ("It is a well-settled rule that statements concerning a principle of law not essential to determination of the case are obiter dictum and lack the force of an adjudication.") (quotation marks and citation omitted). Indeed, such a conclusion would be at odds with the plain language of MCL 500.3106(1)(b), which contains no language mandating an interest in the property beyond the requirement of "physical contact" with "property being lifted or lowered from the vehicle in the loading or unloading process."

It is also notable that the "owned or possessed" language quoted by the *Kemp* Court came from a dictionary definition of "property" that does not itself restrict the thing owned or possessed to a particular person. *Kemp*, 500 Mich at 254 & n 27, quoting *Merriam-Webster's Collegiate Dictionary* (11th ed). In fact, under the same definitional sense of property, that very dictionary also defines property as "something to which a person or business has a legal title." *Merriam-*

*Webster's Collegiate Dictionary* (11th ed). This additional definition makes clear that the owner or possessor of the item is not dispositive of whether it constitutes property.

The trial court also found MCL 500.3106(1)(b) inapplicable because plaintiff was not actively engaged in lifting the property—that is, the stretcher—into the ambulance. This reasoning is again unavailing because neither the plain statutory language nor *Kemp* imposes such a requirement. The exception in subsection (1)(b) states only that the injury must be "a direct result of physical contact with . . . property being lifted onto or lowered from the vehicle in the loading or unloading process." MCL 500.3106(1)(b). If the Legislature intended to limit the availability of PIP benefits to parties who were injured in the act of lifting or lowering property from the vehicle, it could surely have chosen more precise language to reflect that intent. The Legislature did just that in subsection (2)(a) by providing that certain work-related injuries are excluded from PIP benefits if the employee sustains an injury "while doing" certain tasks, including "[l]oading, unloading, or doing mechanical work on a vehicle . . . ." MCL 500.3106(2)(a). Rather than using similar language in MCL 500.3106(1)(b), the Legislature mandated only that the injury must be a direct result of physical contact with property being lifted onto or lowered from the vehicle. "When the Legislature uses different words, the words are generally intended to connote different meanings." *United States Fidelity & Guaranty Co v Mich Catastrophic Claims Ass'n (On Rehearing)*, 484 Mich 1, 14; 795 NW2d 101 (2009). As explained in *Kemp*, this condition only requires proof the "injury was caused by contact with the property being loaded or unloaded." *Kemp*, 500 Mich at 255.

Defendant urges this Court to reach a contrary result because caselaw construing and comparing MCL 500.3106(1)(b) and MCL 500.3106(2)(a) has found that the latter provision encompasses "activities preparatory to the actual loading or unloading," in part because the "loading" and "unloading" language in subsection (2)(a) does not contain the same limitation regarding physical contact with property being lifted onto or lowered from the vehicle in the loading or unloading process. *Bell v FJ Boutell Driveaway Co*, 141 Mich App 802, 807-809; 369 NW2d 231 (1985).[3] Defendant's reliance on this distinction is misplaced because the evidence, viewed in the light most favorable to plaintiff, indicates that the EMTs were not merely preparing to load the stretcher into the ambulance. Rather, the EMTs were physically lifting the stretcher to push it into the ambulance when it overturned. In other words, the stretcher was being lifted onto the ambulance in the loading process when plaintiff was injured.

The trial court's final reason for granting summary disposition with respect to this issue was that plaintiff's injuries were caused not by his contact with the stretcher, but by his contact with the *ground* when the stretcher overturned. This Court has already rejected the same flawed reasoning. In *Adanalic v Harco Nat'l Ins Co*, 309 Mich App 173, 177-178; 870 NW2d 731 (2015), the plaintiff was injured in the process of transferring a loaded pallet from a disabled vehicle to his own semi-trailer. The plaintiff used straps attached to the pallet to pull it across a ramp from one vehicle to the other. *Id*. at 178. When the pallet fell from the ramp while the plaintiff remained

---

[3] Opinions of this Court issued before November 1, 1990, are not strictly binding under MCR 7.215(J)(1), but are generally afforded some deference unless contradicted by more recent caselaw. *Woodring v Phoenix Ins Co*, 325 Mich App 108, 114; 923 NW2d 607 (2018).

attached to it by the straps, he too fell. *Id*. The trial court rejected the defendant's contention that the plaintiff was not entitled to PIP benefits because his injuries arose from contact with the ground, rather than the pallet. *Id*. at 182. Concluding that the trial court's analysis was consistent with the statutory language, this Court affirmed. *Id*. It reasoned that the defendant's position attempted to "fundamentally rewrite the statute to state that a plaintiff's injury must occur as a result of being *struck* by the property being loaded or unloaded," when the plain language required only that "there be 'physical contact' with the property being loaded and that the physical contact 'directly result' in injury." *Id*. The Court agreed that the plaintiff's injury was a direct result of contact with the pallet, explaining, "While hitting the ground when falling occurs at a different instant than the moment the fall begins, it begs credulity (and the law of gravity) to suggest that a fall ending in impact with the ground is not a direct process." *Id*. at 183.

Here, plaintiff's contact with the ground was inextricably tied to his physical contact with the stretcher. But for having been secured to the stretcher, plaintiff would never have fallen to the ground and sustained injuries upon impact. His injury was caused by a "single, unbroken, and immediate course of events," *id*. at 182-183, that occurred because plaintiff was in contact with, and indeed strapped to, the stretcher as it was being loaded onto the ambulance. Because the evidence suggests that plaintiff's injury was a direct result of physical contact with the stretcher as it was being lifted onto the ambulance in the loading process, the trial court erred by concluding that MCL 500.3106(1)(b) was inapplicable as a matter of law.

Having determined that the trial court erred by ruling that MCL 500.3106(1)(b) was inapplicable, the next question is whether "the injury arose out of the ownership, operation, maintenance, or use of the parked motor vehicle *as a motor vehicle*[.]" *Kemp*, 500 Mich at 253 (quotation marks and citation omitted; alteration in original). Concerning this "transportational function requirement," the Supreme Court explained:

> [T]he phrase "use of a motor vehicle 'as a motor vehicle' " would appear to invite contrasts with situations in which a motor vehicle is not used "as a motor vehicle." This is simply to say that the modifier "as a motor vehicle" assumes the existence of other possible uses and requires distinguishing use "as a motor vehicle" from any other uses. While it is easily understood from all our experiences that most often a vehicle is used "as a motor vehicle," i.e., to get from one place to another, it is also clear from the phrase used that the Legislature wanted to except those other occasions, rare as they may be, when a motor vehicle is used for other purposes, e.g., as a housing facility of sorts, as an advertising display (such as at a car dealership), as a foundation for construction equipment, as a mobile public library, or perhaps even when a car is on display in a museum. . . . It seems then that when we are applying the statute, the phrase "as a motor vehicle" invites us to determine if the vehicle is being used for transportational purposes. [*Id*. at 257-258, quoting *McKenzie v Auto Club Ins Ass'n*, 458 Mich 214, 218-219; 580 NW2d 424 (1998) (alteration in original).]

The critical inquiry is thus "whether the injury is closely related to the transportational function of motor vehicles." *Kemp*, 500 Mich at 258 (quotation marks and citation omitted).

The trial court concluded that plaintiff's claim failed on this element, not for lack of a factual dispute, but because plaintiff did not adequately brief it. See *Houghton v Keller*, 256 Mich App 336, 339; 662 NW2d 854 (2003) ("An appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims, nor may he give issues cursory treatment with little or no citation of supporting authority.") (citations omitted). We disagree. A party moving for summary disposition under MCR 2.116(C)(10) "must first specifically identify the issues as to which [it] believes there is no genuine issue as to any material fact, and has the initial burden of supporting its position with affidavits, depositions, admissions, or other admissible documentary evidence." *Innovative Adult Foster Care, Inc v Ragin*, 285 Mich App 466, 475; 776 NW2d 398 (2009) (quotation marks and citations omitted; alteration in original). The nonmoving party is only tasked with establishing a genuine issue of material fact *after* the moving party has met its initial burden. *Id.*

Defendant's dispositive motion noted that, in addition to meeting an exception outlined in MCL 500.3106(1), plaintiff had to establish that the injury arose from the ownership, operation, maintenance, or use of a motor vehicle as a motor vehicle (i.e., the transportational function element) and that the injury had a causal relationship to the parked motor vehicle that was more than incidental, fortuitous, or but for (i.e., the causal relationship element). Defendant argued that plaintiff's injuries were merely incidental to the ambulance because he was receiving medical services at the time and was not in contact with the ambulance. Defendant concluded, "The fact Plaintiff fell near an ambulance is simply incidental and is insufficient to establish he was using a motor vehicle as a motor vehicle." Defendant's single-paragraph argument incorporated language implicating both the transportational function and causal relationship elements, leaving it unclear whether defendant believed there was no genuine issue of material fact as to just one or both of these elements, and thus unclear which element or elements plaintiff had a duty to respond to.[4]

Assuming, without deciding, that plaintiff's duty to respond was triggered by defendant's vague position, the trial court's adoption of its decision in the provider action failed to account for the fact that plaintiff's response in this action was more detailed with respect to the transportational function and causal relationship elements. Concerning the transportational function element, plaintiff cited caselaw regarding the primary purpose of vehicles being for conveyance of people or objects and maintained that the conveyance of the stretcher to which he was attached was closely related to this transportational function. Because plaintiff presented a sound argument regarding this element, the trial court erred by treating it as abandoned.

Moreover, it is clear upon de novo review that the evidence proffered in support of and in opposition to defendant's motion weighed against granting the motion with respect to the transportational function element. When a person is injured while entering a parked vehicle with the intention of traveling, the vehicle is being used as a motor vehicle as a matter of law. *Putkamer v Transamerica Ins Corp of America*, 454 Mich 626, 636; 563 NW2d 683 (1997). Plaintiff was injured while the EMTs were in the process of loading the stretcher to which he was strapped into

---

[4] That said, we acknowledge that the transportational function and causal relationship inquiries are not necessarily discrete inquiries and "bear an obvious logical relationship to one another." *Kemp*, 500 Mich at 264 n 52.

the ambulance so as to transport him from the medical center to a hospital that was better equipped to diagnose his ailment. The ability to "get from one place to another" is the essence of the transportational function of a motor vehicle. *Kemp*, 500 Mich at 257; *McKenzie*, 458 Mich at 218-219. Because plaintiff was being loaded into the ambulance for purposes of transportation, he was clearly using the vehicle for its transportational function. See *Putkamer*, 454 Mich at 636.

The final step for determining whether an injury involving a parked vehicle is compensable under the no-fault act is to consider whether "the injury had a causal relationship to the parked motor vehicle that is more than incidental, fortuitous, or but for." *Kemp*, 500 Mich at 253 (quotation marks and citation omitted). In other words, "[t]he injury must be foreseeably identifiable with the normal use, maintenance and ownership of the vehicle." *Id*. at 263 (quotation marks and citation omitted).

The trial court again found this element lacking because of plaintiff's inadequate briefing of the issue. But as he did with transportational function element, plaintiff likewise provided a more detailed argument regarding the requisite causal relationship, albeit one that focused almost entirely on factual causation with little mention of proximate causation or foreseeability beyond citation to *Kemp*. See *Patrick v Turkelson*, 322 Mich App 595, 616; 913 NW2d 369 (2018) (describing distinction between factual and legal causation). The trial court erred by treating this issue as abandoned without giving consideration to plaintiff's expanded position regarding causation.

Viewing the evidence in the light most favorable to plaintiff, a factfinder could conclude that plaintiff was injured while being loaded into the ambulance for transportation to a hospital. The primary purpose of an ambulance is to provide transportation to people in need of medical attention. It is axiomatic that in order to provide such transportation, the person in need of medical attention will need to enter the ambulance, often by way of a stretcher. It would be unreasonable to conclude that mishaps in that process are not a foreseeable result of the normal use of an ambulance.

Defendant argues that the fortuitous proximity of the ambulance at the time of plaintiff's fall should not result in liability for PIP benefits when the "inherent nature of the ambulance to transport persons for medical care was not the cause of [plaintiff's] injuries." We find this position unpersuasive. Defendant's theory might hold more weight if the stretcher had fallen because of a mechanical failure or some defect in the pavement, but the undisputed evidence indicates that the stretcher tipped because of the manner in which the EMTs attempted to load it into the ambulance. These circumstances clearly implicate the primary purpose of an ambulance acknowledged by defendant, i.e., the transportation of persons for medical care. Plaintiff's injury fell squarely within the exception set forth in MCL 500.3106(1)(b) and established, at minimum, a question of fact as to whether his injury was causally related to the parked ambulance.[5]

---

[5] It is unnecessary to address defendant's argument regarding the admissibility of plaintiff's affidavit because the foregoing analysis is well supported by plaintiff's deposition testimony and the ambulance report regarding the incident.

## IV. CONCLUSION

The trial court erred by granting defendant's motion for summary disposition. MCL 500.3106(1)(b) provides an exception to the parked-vehicle exclusion if "the injury was a direct result of physical contact with . . . property being lifted onto or lowered from the vehicle in the loading or unloading process." Plaintiff sustained injuries when the stretcher he was strapped to fell over as it was being loaded into an ambulance. A jury could conclude that this satisfied the exception set forth in MCL 500.3106(1)(b). The evidence further demonstrated that his injuries arose from use of the ambulance as a motor vehicle and that there was a sufficient causal relationship between his injuries and such use of the ambulance.

Reversed and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Sima G. Patel
/s/ Mark J. Cavanagh
/s/ James Robert Redford