*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

COLIN HOGE,

        Plaintiff-Appellee,

v

FARM BUREAU GENERAL INSURANCE
COMPANY OF MICHIGAN,

        Defendant-Appellant,

CITIZENS INSURANCE COMPANY OF THE
MIDWEST, MICHIGAN ASSIGNED CLAIMS
PLAN, and MICHIGAN AUTOMOBILE
INSURANCE PLACEMENT FACILITY,

        Defendants-Appellees,

and

DONALD PACE and KEVIN CAMPBELL,

        Defendants.

UNPUBLISHED
October 14, 2024
9:50 AM

No. 367523
Wayne Circuit Court
LC No. 22-004882-NI

Before: GADOLA, C.J., and O'BRIEN and MALDONADO, JJ.

PER CURIAM.

In this priority dispute between insurers, defendant-appellant, Farm Bureau General Insurance Company of Michigan, appeals by leave granted[1] the trial court's order granting the motion for summary disposition filed by defendant-appellee, Citizens Insurance Company of the Midwest. In that order, the trial court held that Farm Bureau was the highest priority insurer to

---

[1] *Hoge v Pace*, unpublished order of the Court of Appeals, issued September 20, 2023 (Docket No. 367523).

pay benefits to plaintiff, Colin Hoge, under the no-fault act, MCL 500.3101 *et seq*. pursuant to MCL 500.3114(3). That statute provides in relevant part that an employee who is injured while occupying a motor vehicle owned by the employee's employer is entitled to personal protection insurance (PIP) benefits from the insurer of the vehicle. MCL 500.3114(3). Plaintiff was injured on October 16, 2021, while driving a vehicle owned by MJS Investing, LLC, and insured by Farm Bureau. The trial court concluded that Farm Bureau was responsible for paying plaintiff's benefits under MCL 500.3114(3) because, despite that MJS terminated plaintiff's employment in August 2021, plaintiff was still MJS's employee at the time of the accident. While this conclusion was error, the trial court reached the right result because, for the reasons explained in this opinion, the requirements of MCL 500.3114(3) were nevertheless satisfied. We accordingly affirm the trial court's holding that Farm Bureau is the highest priority insurer for plaintiff's no-fault benefits pursuant to MCL 500.3114(3).

## I. BACKGROUND

Plaintiff was injured in a multi-vehicle accident on October 16, 2021. Plaintiff was driving a 2017 Dodge Ram truck owned by MJS. Plaintiff had previously worked as a technician for Colonial Heating and Cooling, which was wholly owned by MJS. MJS terminated plaintiff's employment two months before the accident on August 22, 2021, but this was not the first time that plaintiff's employment with MJS was terminated. Since plaintiff started working for MJS in 2017, he had been fired (or placed on leave) and re-hired four times.

Plaintiff testified that, when he worked for MJS, the jobs he worked were assigned through an app on his phone. He said that he did not get to choose which jobs he was assigned; rather, MJS scheduled the jobs he was supposed to do. Joshua Pennington, the former owner and current manager of Colonial Heating and Cooling,[2] testified that, when plaintiff worked for MJS, "[h]e was a W-2" employee, and W-2 forms submitted in the trial court confirm this.

Plaintiff testified that he did not own the Ram truck he was driving at the time of the accident; plaintiff explained that it was owned by MJS, and that it was entrusted to him during the course of his employment with MJS. He said "it was a truck that [he] had 24/7," that it was "always with" him, that he "was the only one that drove that truck," and that he kept it at his house when he was not working. Plaintiff also said that, despite the Ram truck being entrusted to him as part of his employment with MJS, he used the truck for personal errands "all the time," and that Pennington knew about this "and absolutely never said a word to [plaintiff] about it." Pennington confirmed that, while plaintiff was working for MJS, Pennington allowed plaintiff to use the Ram truck for personal errands, saying that he knew it was happening and "it was kind of an unspoken thing." Pennington added that plaintiff had an employee handbook, and the handbook said that company vehicles were not to be used for personal errands, so the understanding was that plaintiff was not supposed to use the vehicle for personal errands, but if it did, "it's on [him]."

Pennington was not sure the exact date that plaintiff stopped working for MJS, but confirmed that plaintiff did not work for MJS at all in September 2021 and October 2021. Pennington said that plaintiff had "a lot of personal stuff that . . . require[d] him to take a lot of

---

[2] Pennington sold the business in February 2022.

time off work." Pennington described how this would cause plaintiff to frequently take extended periods off work, which made him "hard to keep track of." Pennington said that the last time plaintiff was rehired, Pennington wanted to "give him another shot," but "[i]t didn't work out" because plaintiff "was really hard to rely on, as far as when he would show up and things like that." That "was kind of the last straw," according to Pennington.

Plaintiff testified that, around the end of August (presumably of 2021), he was told that work was going to be slow at MJS and he was encouraged to find his "own stuff." He added that he had been self-employed since that time. He later said that he actually worked for MJS until September 15, 2021. He claimed that, on that day, Pennington told plaintiff "that [Pennington] was going to sign the truck over to [plaintiff], write off all [plaintiff's] debts that [he] had with [Pennington] because [Pennington] was selling his business." Plaintiff confirmed that, despite not working for MJS at the time of the accident, the Ram truck he was driving belonged to MJS. He nevertheless insisted that it "was going to be signed over to" him.

Pennington disputed this. Pennington said that plaintiff wanted to buy the truck from Pennington, but Pennington knew that this was not realistic because plaintiff had borrowed $40,000 from Pennington that he "never" got "caught up" on, and plaintiff having the money to pay off that loan and buy the truck "was probably not going to happen even though, you know, [plaintiff] said he wanted to." Pennington flatly denied ever having any conversation with plaintiff about wiping out all his debt and signing the truck over to him. Pennington said that, while he did not expect to be paid back by plaintiff, he never agreed to "wiping out his debts."

Still, Pennington confirmed that he let plaintiff continue using the truck after he was terminated "because he had no other vehicle to use for personal stuff" and Pennington "felt sorry for him." Pennington clarified that plaintiff was not renting the vehicle from him, and said that his allowing plaintiff to continuing using the truck "was charity." Pennington explained that, while he should have asked for the truck back "in hindsight," he let plaintiff continue using the truck because they had known each other for close to 30 years and Pennington knew that plaintiff "didn't have another vehicle."

Plaintiff testified that, at the time of the motor vehicle accident, he was self-employed. He said that he "was doing a commercial wiring job for a facility in Romulus" at the time of the accident. Plaintiff also said that, despite being self-employed, he was speaking with Pennington around the time of the accident "because [Pennington] was going to have an electrician pull a permit for the job that [plaintiff] was doing" in Romulus. Pennington confirmed that, on the day of the accident, plaintiff "was not in the scope of any employment" with MJS.

Plaintiff did not have insurance on a personal vehicle at the time of the October 16, 2021 accident, so he sought no-fault benefits from Farm Bureau (the insurer of the commercial vehicle plaintiff was driving at the time), the Michigan Assigned Claims Plan (MACP), and the Michigan Automobile Insurance Placement Facility (MAIPF). Plaintiff filed the complaint giving rise to this action on April 26, 2022. He argued that he was entitled to no-fault benefits from either Farm Bureau or the MACP administered by the MAIPF. On May 16, 2022, the parties stipulated to substitute Citizens as a party in place of the MACP and the MAIPF, and to dismiss the MACP and the MAIPF with prejudice.

Following discovery, Citizens filed a motion for summary disposition on February 28, 2023. As to whether an employment relationship existed between plaintiff and MJS, Citizens argued that it did based on plaintiff's history of employment with MJS. Citizens contended that MJS had previously fired and rehired plaintiff, but plaintiff remained in possession of—and permitted to use—the Ram truck at all times. According to Citizens, the only reason that MJS would allow plaintiff to remain in possession of the truck was because MJS planned on rehiring him as it had done in the past, so the court should consider plaintiff to still be an employee of MJS despite MJS having terminated plaintiff's employment before the accident. Citizens alternatively argued that, even if plaintiff was not MJS's employee at the time of the accident, MCL 500.3114(3) still applied because plaintiff was a statutory owner of the Ram truck and, because he was self-employed, he was both an employee and employer for purposes of MCL 500.3114(3). These facts, Citizens argued, rendered MCL 500.3114(3) applicable, and made Farm Bureau, as the insurer of the vehicle, the highest priority insurer responsible for plaintiff's no-fault benefits.

In response, Farm Bureau argued that plaintiff was not entitled to no-fault benefits from Farm Bureau under MCL 500.3114(3) because, after MJS terminated plaintiff's employment, he was no longer MJS's employee. Farm Bureau contended that this was confirmed by applying the economic-reality test—at the time of the accident, MJS had no control over plaintiff's duties; MJS was not paying plaintiff; MJS did not have the right to fire or discipline plaintiff; and plaintiff was no longer performing any duties integral to MJS's business. Turning to Citizens' alternative argument, Farm Bureau contended that plaintiff was not a statutory "owner" of the Ram truck because his use did not comport with possessory usage consistent with ownership. Farm Bureau alternatively argued that, even if plaintiff was a statutory owner of the truck, he was not entitled to benefits under MCL 500.3114(3) because the language of the statute precluded extending coverage to plaintiff under the circumstances.

The trial court held a hearing on Citizens' motion on May 10, 2023. The parties argued in line with their briefing. After listening to the parties' argument, the trial court granted Citizens' motion. The court explained that it believed Farm Bureau was responsible for providing coverage because MJS allowed plaintiff to remain in possession of its vehicle despite terminating his employment. Upon questioning by Farm Bureau's counsel, the court clarified that it was holding that plaintiff was an employee of MJS given the "fluid nature of his status with the company" in that "he was allowed to keep the vehicle with the expectation that he was—he was—his employment would be—would be continued." The court added, "Nobody's just letting somebody ride around in their company owned, insured, paid for vehicle unless they have, for whatever reason, extended that employment benefit to them." The court ended by again clarifying that it was ruling that there was no question of fact that plaintiff was an employee of MJS at the time of the accident.

This appeal followed.

## II. STANDARD OF REVIEW

Appellate courts review de novo a trial court's grant of summary disposition. *Innovation Ventures v Liquid Mfg*, 499 Mich 491, 506; 885 NW2d 861 (2016). Citizens moved for summary disposition under MCR 2.116(C)(10). In *Maiden v Rozwood*, 461 Mich 109, 120; 597 NW2d 817

-4-

(1999), our Supreme Court explained the standard for a motion under MCR 2.116(C)(10) as follows:

> A motion under MCR 2.116(C)(10) tests the factual sufficiency of the complaint. In evaluating a motion for summary disposition brought under this subsection, a trial court considers affidavits, pleadings, depositions, admissions, and other evidence submitted by the parties, MCR 2.116(G)(5), in the light most favorable to the party opposing the motion. Where the proffered evidence fails to establish a genuine issue regarding any material fact, the moving party is entitled to judgment as a matter of law.

A genuine issue of material fact exists when, after viewing the evidence in a light most favorable to the nonmoving party, reasonable minds could differ on the issue. *Allison v AEW Capital Mgt, LLP*, 481 Mich 419, 425; 751 NW2d 8 (2008).

## III. ANALYSIS

At issue is a priority dispute between Citizens (the MACP-assigned insurer) and Farm Bureau (the insurer of the vehicle plaintiff was driving at the time of the accident). "When determining the priority of insurers liable for no-fault PIP benefits, courts must examine MCL 500.3114." *Duckworth v Cherokee Ins Co*, 333 Mich App 202, 210-211; 963 NW2d 610 (2020). MCL 500.3114(1) sets forth the general rule of priority: "one looks to a person's own insurer for no-fault benefits unless one of the statutory exceptions, subsections 2, 3, and 5, applies." *Parks v Detroit Auto Inter-Ins Exch*, 426 Mich 191, 202-203; 393 NW2d 833 (1986).

Plaintiff here did not have an insurer for his personal auto, and the central question on appeal is whether the exception in MCL 500.3114(3) applies. Stated differently, the question on appeal is whether Farm Bureau, who insured the vehicle plaintiff was driving at the time of the accident under a commercial policy with MJS, is responsible for paying plaintiff's PIP benefits under MCL 500.3114(3). If Farm Bureau is not responsible for paying plaintiff's no-fault benefits, then Citizens, as the MACP-assigned insurer, is responsible for doing so. See MCL 500.3114(4).

MCL 500.3114(3) provides:

> An employee, his or her spouse, or a relative of either domiciled in the same household, who suffers accidental bodily injury while an occupant of a motor vehicle owned or registered by the employer, shall receive personal protection insurance benefits to which the employee is entitled from the insurer of the furnished vehicle.

It is undisputed that MJS was the titled-owner of the Ram truck that plaintiff was driving at the time of the accident, making MJS a statutory owner of the truck. See MCL 500.3101(3)(*l*)(*iii*) (defining "owner" to include "[a] person that holds the legal title to a motor vehicle"). The parties first dispute whether plaintiff was an employee of MJS at the time of the accident.

## A. WAS PLAINTIFF MJS'S EMPLOYEE?

"For purposes of MCL 500.3114(3), whether an injured party was an 'employee' is determined by applying the 'economic reality test.' " *Adanalic v Harco Nat Ins Co*, 309 Mich App 173, 190-191; 870 NW2d 731 (2015) (citation omitted). "By this test, factors to be considered include: (a) control of the worker's duties, (b) payment of wages, (c) right to hire, fire and discipline, and (d) the performance of the duties as an integral part of the employer's business towards the accomplishment of a common goal." *Id*. at 191 (quotation marks and citation omitted).

As recounted above, MJS terminated plaintiff's employment on August 22, 2021. The motor-vehicle accident at issue took place nearly two months later, on October 16, 2021. The termination of plaintiff's employment two months before the accident makes application of the factors for the economic-reality test straightforward. At the time of plaintiff's accident, MJS had no control over plaintiff's duties because he had been terminated; MJS was not paying plaintiff any wages because he had been terminated; MJS could not fire or discipline plaintiff because he had already been terminated; and plaintiff was not performing any duties for MJS (because he had been terminated), so plaintiff had no duties that constituted an integral part of MJS's business. Given that application of the economic-reality test is so straightforward when it involves a claimant whose employment with the alleged employer was previously terminated, this Court has concluded—without consideration of the economic-reality test—that "a former employee" is not an "employee" for purposes of MCL 500.3114(3). *Vitale v Auto Club Ins Ass'n*, 233 Mich App 539, 543; 593 NW2d 187 (1999).

Citizens argues that all four factors of the economic-reality test actually support that plaintiff *was* an employee of MJS at the time of the accident. Citizens' argument is specious, however—it does not discuss plaintiff's relationship with MJS at the time of the accident or even after plaintiff was terminated in August 2021. Citizens instead contends that plaintiff's relationship with MJS before he was terminated supports that he was an employee of MJS at the time of the accident. But there is no dispute that plaintiff was an employee of MJS when he was working for them. The issue is whether plaintiff was still MJS's employee after he was terminated on August 22, 2021. Citizens has not presented any evidence tending to show that, under the economic-reality test, plaintiff was an employee of MJS at the time of the accident.

Insisting on a different result, Citizens contends that plaintiff was a "seasonal" employee who was merely "laid off" at the time of the accident, and that he should therefore be considered an employee of MJS at the time of the accident. In support of this argument, Citizens directs this Court's attention to *Hawthorne v Metro Life Ins Co*, 285 Mich 329; 280 NW 777 (1938). At issue in that case was whether Roosevelt Hawthorne's wife, the plaintiff, was entitled to benefits on a life insurance policy issued by Roosevelt's former employer. *Id*. at 331. The Court held that the plaintiff was not entitled to benefits under the life insurance policy because Roosevelt had been discharged on August 8, 1934, and, by its terms, "[t]he life insurance upon him ceased 31 days after the termination of his employment, or September 10, 1934," which was more than two weeks before Roosevelt's death on September 28, 1934. *Id*. at 336.

On its face, *Hawthorne*'s outcome (that a former employee is not entitled to insurance benefits provided by a previous employer) does not support plaintiff's argument, nor do many statements in the opinion. See, e.g., *id*. at 335 ("The employee is entitled to coverage under the

certificate issued to him only while he remains in the employ of the employer . . . ."); *id*. at 336 ("It would be unreasonable to conclude the policy would inure to the benefit of those who have ceased to be employees."). Citizens nevertheless relies on *Hawthorne* for its statement that "the employer has the right to treat an employee who has been temporarily laid off as still in its employ for the purpose of continuing his insurance . . . ." *Id*. at 335 (quotation marks and citation omitted). But even this quote from *Hawthorne* does not support Citizens' argument. The quote refers to a right given to employers as part of certain insurance policies; the passage begins by stating:

> Most group policies provide that the insurance on any employee may be continued at the employer's option during a temporary lay-off, temporary disability, or leave of absence. *This is a right accorded to, or reserved by, the employer, and constitutes an exception to the general provision that the insurance shall cease with the termination of employment*. [*Id*. at 334, quoting Crawford, *Group Ins* § 34 (quotation marks omitted; emphasis added).]

Citizens does not direct this Court's attention to anything in MJS's policy with Farm Bureau suggesting that MJS had the option to extend the insurance provided by the policy to temporarily-laid-off employees. Nor does Citizens argue that, if this right existed, MJS exercised it. This makes Citizens' reliance on *Hawthorne* inapposite.

Citizens also relies on *Michigan Employment Sec Comm v Gen Motors Corp, Chevrolet Div*, 32 Mich App 642; 189 NW2d 74 (1971), to support its argument that plaintiff was still an employee of MJS at the time of the accident because he was not terminated but laid off. At issue in *Gen Motors Corp* was the unemployment compensation act, MCL 421.1 *et seq*. More specifically, "the narrow issue before" the Court was determining what was "meant by a 'layoff' as that word is used" in a subsection of the unemployment compensation act. *Gen Motors Corp*, 32 Mich App at 645. Citizens contends that *Gen Motors Corp* Court's interpretation of "layoff" as used in the unemployment compensation act "is exactly right and is what happened in this case." Problematically, Citizens fails to explain why this Court's interpretation of the word "layoff" as used in the unemployment compensation act is relevant to determining whether plaintiff was MJS's "employee" for purposes of MCL 500.3114(3) of the no-fault act. Thus, even if Citizens is right that plaintiff was laid off for purposes of the unemployment compensation act, it is not apparent why that matters for purposes of this case. Citizens cannot merely announce a position and leave it to this Court to rationalize the basis for Citizens' argument. See *Conlin v Scio Twp*, 262 Mich App 379, 384; 686 NW2d 16 (2004) ("A party may not merely announce a position and leave it to this Court to discover and rationalize the basis for the party's claim.").

In the end, it cannot be seriously disputed that MJS terminated plaintiff's employment in August 2021, approximately two months before plaintiff's accident in October 2021.[3] After plaintiff was terminated, he ceased being an employee of MJS. This is true both as a matter of common sense and by application of the economic-reality test—after plaintiff was terminated, MJS no longer had control of plaintiff's duties; MJS stopped paying plaintiff; MJS could no longer fire or discipline plaintiff; and plaintiff was no longer performing any duties for MJS, let alone

---

[3] Citizens never seriously disputes that plaintiff was terminated by MJS in August 2021; Citizens instead generally argues that this fact is not dispositive.

duties that were integral to MJS's business. Whether MJS planned to rehire plaintiff at some undisclosed point in the future does not change this conclusion, though that consideration may be relevant in other employment contexts, like perhaps deciding whether plaintiff was permanently discharged or temporarily laid off for purposes of the unemployment compensation act. See, e.g., *Gen Motors Corp*, 32 Mich App at 647-648. It is also possible that no-fault benefits could have been extended to plaintiff as a former employee if so provided in MJS's policy with Farm Bureau, see, e.g., *Hawthorne*, 285 Mich at 334-335, but Citizens does not argue that MJS's policy had any such provision. Accordingly, on the record before this Court, there is no question that plaintiff was not an employee of MJS at the time of the October 2021 accident.

## B. CAN FARM BUREAU STILL BE LIABLE?

Citizens alternatively argues that, even if plaintiff was not an employee of MJS at the time of the accident, he was still self-employed and a statutory owner of the Ram truck, which entitled him to benefits from Farm Bureau, as insurer of the truck, under MCL 500.3114(3). We agree.

In *Celina Mut Ins Co v Lake States Ins Co*, 452 Mich 84, 85; 549 NW2d 834 (1996), our Supreme Court addressed whether MCL 500.3114(3) "applies when the injured person is operating an insured vehicle in the course of self-employment." The facts in *Celina* were relatively straightforward. Robert Rood, who was self-employed, was injured in a motor-vehicle accident during the course of his employment. *Id*. at 86-87. Rood owned the truck that he was driving at the time of the accident, and the truck was insured by Celina Mutual Insurance Company. *Id*. at 87. A different insurance company (Lake States Insurance Company) insured Rood's personal vehicles. *Id*. The insurance companies disputed which one was responsible for paying no-fault benefits to Rood as a result of the accident. *Id*. This Court held that MCL 500.3114(3) did not apply under the facts—and thus Celina was not responsible for Rood's benefits—because Rood could not be both his own employer and his own employee for purposes of MCL 500.3114(3). *Id*. at 87-89. Our Supreme Court disagreed, reasoning "that it is most consistent with the purposes of the no-fault statute to apply § 3114(3) in the case of injuries to a self-employed person" because "[t]he cases interpreting that section have given it a broad reading designed to allocate the cost of injuries resulting from use of business vehicles to the business involved through the premiums it pays for insurance." *Id*. at 89.

Almost 15 years later, this Court applied *Celina*'s reasoning in *Besic v Citizens Ins Co of the Midwest*, 290 Mich App 19; 800 NW2d 93 (2010). The claimant in *Besic* was injured while driving a tractor-trailer rig in Ohio. *Id*. at 21. The claimant owned the tractor and leased it to MGR Express, Inc. *Id*. at 21-22. Pursuant to an agreement between MGR and the claimant, MGR bought liability insurance for the tractor-trailer rig from Lincoln General Insurance Company that applied "while [the claimant] was operating under the terms of" the parties' agreement, and the claimant bought bobtail insurance[4] for the tractor from Clearwater Insurance Company. *Id*. at 22. Despite that the claimant was injured while hauling freight, this Court held that the claimant's

---

[4] "Generally, a 'bobtail' policy is a policy that insures the tractor and driver of a rig when it is operated without cargo or a trailer." *Besic*, 290 Mich App at 22 n 1 (quotation marks and citation omitted).

bobtail insurance with Clearwater applied under the facts given that policy's terms.  *Id*. at 24-30.
As part of contesting its liability, Clearwater argued that it should, at most, share responsibility for
the claimant's PIP benefits with the insurer of the claimant's personal vehicles.  This Court rejected
Clearwater's argument, reasoning that, because claimant owned the truck and worked as a self-
employed independent contractor, MCL 500.3114(3) applied, and Clearwater, as the insurer of the
truck, was responsible for paying the claimant's first-party benefits.  *Besic*, 290 Mich App at 32.

After *Besic*, this Court again had occasion to address MCL 500.3114(3) in *Adanalic*.  In
that case, the claimant was "injured while unloading a pallet from a disabled box truck onto a semi-
trailer."  *Adanalic*, 309 Mich App at 177.  The trailer was not owned by the claimant, but the truck
hauling the trailer was.  *Id*. at 177 n 1.  The accident in *Adanalic* occurred after the claimant
accepted a dispatch from DIS Transportation, and both the truck that plaintiff was driving and the
trailer he was hauling were insured by Harco National Insurance Company in a policy issued to
DIS.  *Id*. at 177.  One of the issues that this Court addressed was whether the claimant was entitled
to benefits from Harco, which the panel reasoned depended on whether the claimant was DIS's
employee or an independent contractor at the time of the accident.  *Id*. at 190.  After applying the
economic-reality test, this Court concluded that the claimant was an independent contractor for
DIS.  *Id*. at 194.  Given this conclusion, this Court held that the insurer of the claimant's personal
vehicles, not Harco, was responsible for paying the claimant's no-fault benefits.  *Id*.

Five years later, this Court in *Miclea v Cherokee Ins Co*, 333 Mich App 661, 670; 963
NW2d 665 (2020), again addressed MCL 500.3114(3), focusing on what it called "a superficial
conflict between *Celina*, *Besic*, and *Adanalic*."  *Miclea* reasoned that both *Celina* and *Besic* stand
for the proposition that "if a person is self-employed, that person is necessarily both employer and
employee for purposes of MCL 500.3114(3)," while "*Adanalic* clearly addressed only whether a
person could simultaneously be an employee and an independent contractor of the same entity at
the same time."  *Id*. at 670-671.  The Court further reasoned that the holdings in *Celina* and *Besic*
were not in tension with the holding in *Adanalic* because, in *Celina* and *Besic*, "the injured parties
owned the vehicles in which they were injured," whereas in *Adanalic*, "the injured party owned
the truck but his injuries involved his occupancy of a semi-trailer that he did not own."  *Id*. at 671.[5]
The *Miclea* panel concluded that, while all three cases addressed "whether an owner of the
occupied vehicle employed the injured party," the claimant's "self-employment status" in
*Adanalic* was "irrelevant" because he "did not own the vehicle in which he was injured."  *Id*.  The
*Miclea* panel concluded its opinion as follows:

> [T]here is no need to determine which of *Celina*, *Besic*, and *Adanalic* "controls"
> over the others, because all three cases can be harmonized.  A person cannot be an
> employee and independent contractor of the same entity at the same time.
> However, being an independent contractor of one entity does not preclude a person
> from simultaneously being an employee of another entity, which can include one's

---

[5] The accident in *Adanalic* occurred while the claimant was moving boxes from the disabled truck
to the trailer that he was hauling.  *Adanalic*, 309 Mich App at 177-178.  While the claimant owned
the truck hauling the trailer, the claimant did not own the trailer itself.  *Adanalic*, 309 Mich App
at 177 n 1.

self. On these facts, plaintiff was not an employee of Universal, but he was an employee of himself. Because plaintiff also "owned" the vehicle, MCL 500.3114(3) applies. Because Cherokee insured the vehicle, it is the insurer of highest priority. [*Miclea*, 333 Mich App at 672 (footnote omitted).]

Applying *Miclea* here, if plaintiff was self-employed (and thus both employee and employer under MCL 500.3114(3)) and "owned" the Ram truck he was driving at the time of the accident, then Farm Bureau, as the insurer of the truck, would be liable for plaintiff's PIP benefits under MCL 500.3114(3). Farm Bureau does not dispute that plaintiff was self-employed at the time of the accident, nor does Farm Bureau dispute that it insured the Ram truck at the time of the accident. Farm Bureau instead principally argues that plaintiff was not an "owner" of the Ram truck involved in the accident.

It is undisputed that plaintiff was not a titled owner of the Ram truck involved in the accident. The parties dispute instead whether plaintiff was a statutory owner of the truck at the time of the accident. MCL 500.3101(3)(*l*)(*i*) defines "owner" under the no-fault act to include "[a] person renting a motor vehicle or having the use of a motor vehicle, under a lease or otherwise, for a period that is greater than 30 days."

In *Ardt v Titan Ins Co*, 233 Mich App 685, 690; 593 NW2d 215 (1999), this Court held "that 'having the use' of a motor vehicle for purposes of defining 'owner' means using the vehicle in ways that comport with concepts of ownership." (Citation omitted.) The Court expounded that "ownership follows from proprietary or possessory usage, as opposed to merely incidental usage under the direction or with the permission of another." *Id*. at 691 (emphasis omitted). The *Ardt* Court ultimately concluded that there was a question of fact about whether the injured claimant was an "owner" of the motor vehicle he was driving at the time of the accident because witnesses offered different accounts of the claimant's use of the vehicle. *Id*. The Court explained that "the spotty and exceptional pattern of [the claimant's] usage" of the motor vehicle to which one witness testified "may not be sufficient to render [the claimant] an owner of the truck," while "the regular pattern of unsupervised usage" to which another witness testified "may well support a finding that [the claimant] was an owner for purposes of the statute." *Id*.

Two years later, in *Chop v Zielinski*, 244 Mich App 677; 624 NW2d 539 (2001), this Court again addressed whether the plaintiff was an "owner" of the motor vehicle she was driving at the time of her accident based on her usage of the vehicle. The plaintiff's ex-husband, not the plaintiff, was the titled owner of the vehicle the plaintiff was driving at the time of the accident, but *Chop* nevertheless held that there was no question of fact that the plaintiff was also an "owner" of the motor vehicle based on her usage. *Id*. at 680-682. *Chop* reasoned as follows:

Plaintiff testified during her deposition that she kept the car parked at her apartment complex, which was a residence she kept separate from her ex-husband, drove the car to and from work on a daily basis, and used the car for other personal errands. Plaintiff's use of the car in such a manner was possessory use that comports with the concepts of ownership. There is no indication that plaintiff used the car under the specific direction of her ex-husband or with her ex-husband's permission. Indeed, plaintiff's own testimony regarding her regular use of the car reveals that she exercised ownership rights over the vehicle. . . . Given plaintiff's

-10-

deposition testimony, there is no issue of fact regarding whether plaintiff had possessory use of the car for more than thirty days before the date of the accident. Thus, she was an "owner" of the car under the no-fault act. [*Id*. at 681-682 (citation omitted).]

In this case, like in *Chop*, there is no question of fact that plaintiff had proprietary or possessory usage of the Ram truck for at least 30 days before the accident such that he was an "owner" of the Ram truck under MCL 500.3101(3)(*l*)(*i*). It is undisputed that plaintiff was in lawful possession of the truck, despite no longer being employed by MJS. It is also undisputed that, by the time of the accident, plaintiff had been in possession of the truck for more than 30 days—including more than 30 days since MJS terminated plaintiff's employment. Plaintiff testified that, while he possessed the truck, it was kept at his house "24/7," he used the truck for personal errands "all the time," he drove the truck for work, and he did not have to ask permission to use the truck. It is also undisputed that plaintiff was permitted to use the truck for personal errands without asking permission. Pennington testified that he was aware that plaintiff used the truck for personal errands and never objected; he said "it was kind of an unspoken thing." Pennington also testified that plaintiff never had to ask Pennington's permission to use the vehicle for any particular purpose. On this record, there is no question of fact that plaintiff had a "regular pattern of unsupervised usage" of the Ram truck for more than 30 days before the accident, *Ardt*, 233 Mich App at 691, meaning that plaintiff "had possessory use of the car for more than thirty days before the date of the accident," *Chop*, 244 Mich App at 682. This made plaintiff an "owner" of the Ram truck for purposes of the no-fault act. See MCL 500.3101(3)(*l*)(*i*).

Farm Bureau insists that, even if plaintiff was a constructive owner of the Ram truck, MCL 500.3114(3) cannot apply under the circumstances of this case because plaintiff, as the "employer" for purposes of MCL 500.3114(3), did not purchase the policy from Farm Bureau. This argument is unconvincing for two reasons. First and foremost, MCL 500.3114(3), by its terms, is not restricted to circumstances in which "the employer" purchased insurance for the vehicle involved in the accident. The statute instead states circumstances in which "[a]n employee" who is injured in "a motor vehicle owned . . . by the employer" is entitled to no fault benefits "from the insurer of the furnished vehicle." MCL 500.3114(3). Second, placing such a restriction on MCL 500.3114(3) would be inconsistent with *Miclea*. There, the relevant policy with Cherokee was purchased by Universal, and this Court concluded that Cherokee was the insurer of highest priority, despite concluding that the plaintiff was self-employed. *Miclea*, 333 Mich App at 665, 672.

Farm Bureau next contends that plaintiff is not entitled to benefits under MCL 500.3114(3) because the Ram truck—"the furnished vehicle" under the statute—was "furnished" by MJS, not plaintiff, so the truck was not "furnished" by plaintiff's employer, i.e., himself. Even if Farm Bureau is correct that the Ram truck had to be "furnished" by plaintiff's employer, Farm Bureau has not sufficiently developed this argument to warrant relief. Farm Bureau merely claims that "the vehicle was furnished by MJS, who is not plaintiff's employer." While it is true that MJS originally gave the vehicle to plaintiff, it is not clear why this is dispositive. That the vehicle was furnished by MJS at one point does not necessarily mean that plaintiff (as his own employer and a constructive owner of the Ram truck) could not have "furnished" the Ram truck to himself (as his employee) at a later time. While it is somewhat odd to think of someone "furnishing" a vehicle to themselves, if this Court accepts the premise of Farm Bureau's argument as true, then the self-employed claimants in *Besic* and *Miclea* (as their own employers) must have "furnished" the

vehicles they were driving to themselves (as their own employees), because MCL 500.3114(3) applied in both cases. Without some explanation for why plaintiff did not "furnish" the vehicle to himself, Farm Bureau's argument must be rejected, even if Farm Bureau is correct that MCL 500.3114(3) requires that the vehicle involved in the accident be "furnished" by the "employer."

Farm Bureau next argues that the statute cannot apply because it states that the employee "shall receive personal protection insurance benefits *to which the employee is entitled* from the insurer of the furnished vehicle." MCL 500.3114(3) (emphasis added). Farm Bureau contends that the emphasized language precludes application of MCL 500.3114(3) because plaintiff is not entitled to any benefits from Farm Bureau under the terms of Farm Bureau's policy with MJS. We agree with Citizens, however, that the emphasized language merely refers to statutory PIP benefits to which plaintiff may be entitled.

Lastly, Farm Bureau argues that interpreting MCL 500.3114(3) as this opinion does would "negate the legislative amendment to MCL 500.3114(4)." We disagree. Before MCL 500.3114(4) was amended, it stated that it did not apply when Subsection (3) applied. See MCL 500.3114(4), as amended by 2016 PA 347 ("Except as provided in subsections (1) and (3) . . . ."). As amended, MCL 500.3114(4) continues to state that it does not apply when Subsection (3) applies. See MCL 500.3114(4), as amended by 2019 PA 21 (Except as provided in subsections (2) and (3) . . . ."). We conclude that Subsection (3) applies, so MCL 500.3114(4) is inapplicable, and any changes that the Legislature made to that subsection in 2019 are not relevant to deciding the issue presented in this case.

Accordingly, we conclude that, at the time of the accident, plaintiff was both an "employee" and "employer" for purposes of MCL 500.3114(3), and he constructively "owned" the Ram truck involved in the accident under MCL 500.3103(*l*)(*i*). This means that MCL 500.3114(3) applied, and Farm Bureau, as the insurer of the vehicle, was the insurer of highest priority. See *Miclea*, 333 Mich App at 672. We therefore affirm the trial court, albeit on different grounds.

Affirmed.

/s/ Michael F. Gadola
/s/ Colleen A. O'Brien
/s/ Allie Greenleaf Maldonado